*Fallamos:* que debemos revocar y revocamos la sentencia apelada, declarando con lugar la demanda de divorcio establecida por Don Ceferino Huertas contra su esposa Doña Ana Marrero, y en su consecuencia disuelto el vínculo matrimonial existente entre ambos esposos, con todos los demás efectos legales que sean procedentes; entendiéndose las costas de la primera instancia de cargo de la demandada Doña Ana Marrero, y las de esta segunda instancia sin especial condenación.

Jueces concurrentes: Sres. Hernández, Sulzbacher y Mac Leary.

El Juez Asociado Sr. Figueras no formó Tribunal en la vista de este caso.

---

## Ex Parte Bird.

### Solicitud para que se expida mandamiento de Habeas Corpus.

#### No. 22.—Resuelto en Noviembre 25, 1903.

DESACATO.—COMPETENCIA EN ESTOS CASOS.—Cuando en un Tribunal colegiado un sólo Juez forma Tribunal para presidir un juicio por jurado, tal Juez es perfectamente competente, por razón de la materia y de su personalidad, para conocer de cualquier procedimiento por desacato cometido contra el Tribunal así constituido, y dictar la sentencia que sea procedente.

ID.—CELEBRACIÓN DEL JUICIO EN AUSENCIA DEL ACUSADO.—En las causas por delito menos grave, á cuya naturaleza corresponde el de desacato, no es requisito indispensable para la validéz del juicio la presencia del acusado, siempre que esté representado por su abogado defensor.

ID.—MANDAMIENTO DE ARRESTO.—En los casos de desacato la orden ó mandamiento de arresto deberá estar firmada por el Juez sentenciador, y hacerse constar en ella el acto ó actos constitutivos del desacato, la fecha y lugar de su comisión y circunstancias de la misma, con especificación de la sentencia que se hubiere dictado, y la falta de dichos requisitos producirá la completa nulidad de dicha sentencia, quedando por consiguiente nulo y sin ningún valor el mandamiento de arresto.

ID.—La facultad de los Tribunales de Justicia para castigar los desacatos cometidos contra su autoridad, está sancionada por el artículo 7 del Código Penal, por cuya razón las disposiciones de este último no afectan en lo más mínimo á aquellas contenidas en la Ley especial, definiendo y penando el delito de desacato, no habiendo tampoco conflicto alguno entre ellas.

ID.—Las penas por desacato impuestas con arreglo á la Ley especial sobre la materia, no implden la acción penal que por el mismo delito pueda entablar el Fiscal de la respectiva jurisdicción.

---

## Ex Parte Bird.

### Application for a writ of Habeas Corpus.

No. 22.—Decided November 25, 1903.

Contempt—Jurisdiction,—When in a court consisting of several judges only one presides over trials by jury, such judge by reason of the subject-matter and of his position as trial judge has jurisdiction to hear and determine any case prosecuted for contempt of court thus constituted and to render such sentence as may be proper.

Id.—Procedure—Trial in the Absence of Defendant.—Contempt of court being a misdemeanor, the trial may be had in the absence of the defendant provided he is represented by counsel.

Id.—Commitment.—An order of imprisonment for contempt, in addition to the signature of the judge who delivered the sentence, must set forth the acts constituting the contempt, the time and place of the commission thereof, and the attending circumstances, and also the specification of the sentence, otherwise such sentence is wholly invalid and inoperative, and the warrant of commitment issued for the execution thereof is null and void.

Id.—The power of courts of justice to punish contempts of court committed against their authority is sanctioned by section 7 of the Penal Code. The provisions of the latter, therefore, do not affect those contained in the special act defining and punishing the offense of contempt of court, nor is there any conflict between them.

Id.—Criminal Prosecutions.—Punishment for contempt of court inflicted under the special act does not bar a criminal prosecution for the same offense conducted by the *Fiscal* of the proper jurisdiction.

### EXPOSICIÓN DEL CASO.

*Resultando:* que diligenciado en forma el mandamiento de habeas corpus, se celebró la vista de estas diligencias con asistencia del peticionario Mr. Hobart S. Bird, acompañado de su abogado defensor Don Santiago B. Palmer y del Fiscal de esta Corte Suprema que se adhirió *in voce* al recurso, rectificando posteriormente su opinión, por escrito, de acuerdo con las instrucciones que recibiera del Departamento de Justicia en el sentido de que, debiendo estimarse derogada por el Código Penal que comenzó á regir el 1.º de Julio del año próximo pasado, la Ley votada por la Asamblea Legislativa de esta Isla y aprobada en 1.º de Marzo del mismo año, "definiendo el delito de desacato y disponiendo la pena correspondiente," cuando menos en aquella parte de la Sección 3ª de la propia ley que declara nula la sentencia pronunciada en los casos de desacato si el mandamiento no contuviese los requisitos que dicha sección previene, por estimar esta parte de la ley en conflicto con el Código Penal que comenzó á regir posteriormente, y que no contiene semejante precepto al ocuparse en su artículo 145 de los delitos de desacato, concluyó oponiéndose á la excarcelación solicitada por el peticionario Mr. Hobart S. Bird y que debía rectificarse el mandamiento que había servido para constituirlo en prisión, autorizándolo con su firma el Presidente del Tribunal que así lo había dispuesto.

*Resultando:* de los documentos presentados por el promovente, que seguido procedimiento criminal por el Presidente del Tribunal del Distrito de Mayagüez Don Arturo Aponte, como Presidente del Tribunal que entendía del juicio por Jurados contra Don Osvaldo Baez, por el delito de desacato, contra el Director y corresponsal del periódico "The San Juan News" que se edita en esta Capital, Mr. Hobart S. Bird y Don Julio Medina, respectivamente, por la publicación en el número de dicho periódico correspondiente al 29 de Setiembre último, de ciertas noticias relativas á los procedimientos seguidos en la expresada causa criminal, que el

## STATEMENT OF THE CASE.

The writ of *habeas corpus* having been duly returned, the hearing thereon was had, the petitioner Hobart S. Bird being present with his counsel, Santiago B. Palmer, as also the *Fiscal* of the Supreme Court who verbally assented thereto, and subsequently rectified his opinion, in writing, under instructions received from the Department of Justice to the effect that, inasmuch as the act passed by the Legislative Assembly of this Island "defining the offence of contempt of court and providing for the punishment thereof", approved March 1, 1908, should be considered as having been repealed by the Penal Code which took effect on July 1 of the same year, at least as to that part of section 3 of said act which declares invalid the sentence of a court pronounced in cases of contempt, where the commitment fails to comply with the requirements prescribed by said section, this part of the act being deemed to conflict with the Penal Code which subsequently took effect, and contains no such provision under section 145 thereof in regard to contempt of court. In conclusion he opposed the discharge applied for by the petitioner Hobart S. Bird, and urged that the commitment under which he was imprisoned should be corrected by the presiding judge of the court who ordered the arrest by affixing his signature thereto.

From the documents filed by the petitioner it appears that criminal proceedings having been instituted by Presiding Judge Arturo Aponte, of the District Court of Mayagüez, as presiding judge of the court wherein the trial by jury of Osvaldo Baez was held, for the offense of contempt of court, against the editor and correspondent of the newspaper "The San Juan News", edited in this city, namely Hobart S. Bird and Julio Medina, respectively, for publishing in the issue of said paper of the 29th of September last, certain items of news with reference to the proceedings had in aforesaid criminal case, which the presiding judge of the court declar-

Presidente del Tribunal declaró falsas, y tendentes á producir el descrédito y el desprestigio del Tribunal en el concepto público, se dictó sentencia en 14 de Octubre siguiente por el Presidente del Tribunal Don Arturo Aponte, condenando al Director del periódico Mr. Hobart S. Bird á la pena de quince días de prisión en la cárcel pública de Mayagüez y cien dollars de multa, y á Don Julio Medina á treinta días de prisión en la misma cárcel y á multa de doscientos dollars y disponiendo se librara para la ejecución de la sentencia el correspondiente mandamiento al oficial encargado de la paz pública, lo que se llevó á efecto, expidiéndose el mandamiento autorizado sólo por el Secretario del Tribunal de Distrito de Mayagüez y sin consignar los actos constitutivos del delito imputado á los acusados, siendo en su consecuencia detenido en esta Capital el peticionario Mr. Hobart S. Bird por el Teniente de la Policía Insular Don Francisco Tallada, que lo tenía bajo su custodia hasta el momento de interponer el presente recurso de hábeas corpus.

Abogados del peticionario: *Sres. Dexter, Hord y Palmer.*

Abogado del Pueblo: *Sr. del Toro, Fiscal.*

El Juez Presidente Sr. Quiñones, después de exponer los hechos anteriores, emitió la siguiente opinión del Tribunal.

*Considerando:* que, constituyendo la publicación de la correspondencia inserta en el periódico "The San Juan News," un delito de desacato contra el Tribunal que entendía en la causa criminal seguida contra Don Osvaldo Baez, comprendido dicho delito en los casos 3 y 5, Sección 1ª de la Ley votada por la Asamblea Legislativa de esta Isla y aprobada en 1º de Marzo del año próximo pasado, definiendo y penando el expresado delito, puesto que las noticias trasmitidas por el corresponsal del periódico aludido, que han sido declaradas falsas por el Presidente del Tribunal y cuya exactitud no se ha comprobado en ninguna forma por los interesados, tendían directamente á llevar el descrédito y el desprestigio del Tribunal en el concepto público, haciendo sospechosos de parcialidad y falta de rectitud al Presidente

ed to be false and tending to bring the court into disrepute. Judgment was rendered by the presiding judge of the court, Arturo Aponte, on October 14, following, sentencing the editor of the paper, Hobart S. Bird, to fifteen days of imprisonment in the public jail of Mayagüez, and to pay a fine of one hundred dollars, and Julio Medina to thirty days of imprisonment in the same jail, and a fine of two hundred dollars and directing that the proper commitment for the execution of said sentence be issued to the official having charge of the public peace, the commitment issued being signed only by the clerk of the District Court of Mayagüez, and without setting forth the acts constituting the offense imputed to the parties accused. On the strength of said warrant of commitment the petitioner, Hobart S. Bird, was arrested in this city by Lieut. Francisco Tallada, of the Insular Police, who had him in custody up to the time of the institution of the present *habeas corpus* proceedings.

*Messrs. Dexter, Hord* and *Palmer,* for petitioner.

*Mr. del Toro, Fiscal,* for the People.

Mr. Chief Justice Quiñones, after making the above statement of facts, delivered the following opinion of the court:

The publication of the correspondence inserted in the newspaper "The San Juan News", constituted the offense of contempt of the court that tried the criminal case prosecuted against Osvaldo Baez, as defined by paragraphs 3 and 5 of section 1 of an act of the Legislative Assembly of this Island, "defining the offense of contempt of court and providing for the punishment thereof", approved March 1, 1902, inasmuch as the news transmitted by the correspondent of aforesaid newspaper, declared to be false by the presiding judge of the court, and the accuracy of which was not in any manner substantiated by the parties concerned, tended to bring the court into disrepute, by bringing about suspicion of partiality and lack of integrity on the part

del Tribunal y á los Jurados que entendían en la causa y sobre los que se pretendía hacer recaer la sospecha de estar sobornados ó influídos por personas prominentes de la localidad para votar en sentido favorable al acusado; y siendo por otra parte competente el Juez Presidente del Tribunal Don Arturo Aponte para sustanciar y decidir el procedimiento seguido contra los responsables del expresado delito, con absoluta independencia de los demás jueces del Tribunal del Distrito, y cuya jurisdicción asumía para entender de la citada causa y en todas las incidencias que pudieran surgir durante su curso, entre las cuales no puede dudarse que deben estimarse comprendidas los desacatos que pudieran cometerse á la presencia del Tribunal, ó en otra forma de las que la ley previene y establece, es indudable que tanto por razón de la materia, cuanto por la persona del Juez sentenciador era competente el Presidente del Tribunal Don Arturo Aponte para conocer y fallar el proceso seguido contra los referidos Mr. Hobart S. Bird y Don Julio Medina por desacato al expresado Tribunal, y que en su consecuencia debe desestimarse la alegación de incompetencia propuesta por el peticionario en su escrito.

*Considerando:* que tampoco es de estimarse la otra alegación de nulidad formulada por el mismo peticionario Mr. Hobard S. Bird en razón á haberse celebrado el juicio sin su asistencia no obstante haber solicitado su suspensión alegando justa causa, pues habiéndose suspendido el juicio por primera vez á solicitud del mismo interesado, y habiendo sido citado por segunda vez con señalamiento de día para la celebración del juicio que se llevó á efecto con asistencia de su abogado defensor, el que alegó en el acto cuanto estimó pertinente á su derecho, se han observado las formas esenciales del juicio y no puede el interesado querellarse de que se le hubiera privado de ningún derecho sustancial, máxime cuando es regla general establecida por el artículo 179 del Código de Enjuiciamiento Criminal, que puede aplicarse por analogía como doctrina en el presente caso, que en las

of the presiding judge and the jurors having cognizance of the case, whom it was sought to place under suspicion of being bribed or influenced by prominent persons of the locality, to give a decision in favor of the accused and, on the other hand, inasmuch as Judge Arturo Aponte, who presided over the court, was competent to hear and decide the case prosecuted against the parties responsible for aforesaid offense, with absolute independence of the other judges of the District Court whose jurisdiction he assumed, to take cognizance of said case and of all the incidental issues that might be raised in the course of the hearing, among which must be considered as included any contempt committed in the presence of the court or in any other manner provided for by the law, there can be no doubt that the presiding judge of the court, Arturo Aponte, had jurisdiction both by reason of the subject—matter and of his position as trial judge, and was competent to hear and determine the case prosecuted against the aforesaid Hobart S. Bird and Julio Medina, for contempt of said court, and that, therefore, the plea of lack of jurisdiction made by the petitioner in his application should be dismissed.

Nor should any consideration be given to the other allegation of nullity urged by said petitioner, on the ground that the trial was held in his absence, although he had asked for a continuance alleging a just cause therefor, because the trial having been continued for the first time at the request of the same party, and another citation was made and a day set for the hearing, which was had, his counsel being present and alleging what was deemed by him pertinent to his case, the essential formalities of the proceeding were observed, and the party concerned cannot complain of having been deprived of any substantial right, especially when it is a general rule established by section 179 of the Code of Criminal Procedure, which by analogy may be applied as a doctrine in the present case, that in prosecutions for misdemeanors, in which class contempt of

causas por delitos menos graves á cuya naturaleza corres-
ponde el de desacato, no es requisito indispensable para la
validez del juicio la presencia del acusado, siempre que esté
representado por su abogado defensor.

*Considerando:* que esto no obstánte, estando dispuesto
por la citada ley sobre desacato en su sección 3ª que "siem-
pre que alguna persona fuere multada ó encarcelada por
desacato á un Tribunal, deberá firmarse por el Juez senten-
ciador una órden ó mandamiento para dicha multa ó pri-
sión, consignándose en el mismo, el acto ó actos constituti-
vos de dicho desacato, así como la fecha y lugar de su comi-
sión y circunstancias de la misma, con especificación de la
sentencia del Tribunal, sin lo cual dicha sentencia quedará
enteramente nula y sin efecto; y no conteniendo el manda-
miento librado para la prisión de Mr. Hobart S. Bird los
requisitos prevenidos en la citada sección, pues ni está auto-
rizado por el Juez sentenciador, Sr. Aponte, ni contiene la
relación de los actos constitutivos del desacato, es nula por
disposición expresa de la ley la sentencia pronunciada por
dicho Juez Sr. Aponte, y por consiguiente nulo y sin nin-
gún valor el mandamiento librado para su ejecución en la
persona de Mr. Hobart S. Bird.

*Considerando:* que no puede admitirse la teoría susten-
tada por el Ministerio Fiscal en su informe escrito, de que
la ley de la Asamblea Legislativa de esta Isla definiendo y
penando el delito de desacato esté derogada por el Código
Penal, pues aparte de que no puede presumirse que entrara
en la mente de la Asamblea Legislativa que una ley creada
para robustecer y afianzar la autoridad y el prestigio de los
Tribunales de Justicia, sólo estuviera en uso temporalmente
ó sea desde el 1 de Marzo de 1902 en que fué aprobada,
hasta el 1 de Julio del mismo año en que comenzó á regir
el Código Penal, resulta, por el contrario, que éste no la
afecta en lo más mínimo, toda vez que con arreglo al ar-
tículo 7 del propio Código, nada de lo que en él se establece
y consigna afecta á "ningún poder conferido por la ley á

court is included, the presence of the defendant is not a necessary condition for the validity of the proceeding, provided he be represented by his counsel.

Notwithstanding this, since by section 3 of aforesaid act referring to contempt of court, it is provided that "whenever a person is fined or committed to jail for a contempt of court, an order or warrant for such fine or imprisonment must be signed by the judge delivering such sentence, setting forth the act or acts constituting such contempt, with the time and place of the commission thereof, and the circumstances thereof, and specifying the sentence of the court, otherwise such sentence will be wholly invalid and inoperative"; and as the warrant issued for the commitment of Hobart S. Bird does not contain the requisites prescribed by aforesaid section, inasmuch as it is not signed by the trial judge, Aponte, nor does it contain a statements of the acts constituting the contempt, the judgment delivered by said Judge Aponte is null and void according to the express provisions of the law, and, therefore, the warrant issued for the execution thereof upon the person of Hobart S. Bird, is null and void.

The theory advanced by the *Fiscal* in his brief to the effect that the act of the Legislative Assembly of Porto Rico defining and punishing the offense of contempt of court has been repealed by the Penal Code, cannot be sustained, for aside from the fact that it cannot be presumed that the Legislature intended that a law created for the purpose of strengthening and sustaining the authority and prestige of the courts should have only temporary effect — from March 1, 1902, when it was approved, to July 1 of the same year, when the Penal Code took effect—it appears, on the contrary, that the latter does not affect it in the least, inasmuch as under section 7 of said code, nothing therein "affects any power conferred by law upon any court martial or military authority or other officer, to impose or inflict

cualquier Consejo de Guerra, autoridad ú oficial militar para imponer castigos á delincuentes, ni á ningún poder conferido por la ley á cualquier cuerpo, tribunal ó funcionario público para castigar delincuentes"; de donde se deduce que entre esos poderes está indudablemente comprendido el que se confiere por la citada Ley de la Asamblea Legislativa á esta Corte Suprema, á las Cortes de Distrito y á cualquier otro Tribunal análogo, ó semejante, debidamente establecido en Puerto Rico para castigar los desacatos cometidos contra su autoridad, bien se cometan á su presencia, ó en cualquier otra forma de los que la misma ley determina.

*Considerando:* que esta doctrina la robustece y confirma la propia ley de la Asamblea Legislativa al disponer en su sección 3ª "que la pena por desacato impuesta con arreglo á dicha sección no impedirá la acción penal que por el mismo delito entablare el Fiscal de la respectiva jurisdicción; pero que cuando una persona así castigada resultare convicta en la causa adicional que se le siguiere, el Tribunal al sentenciar, tomará en cuenta el castigo impuéstole anteriormente con arreglo á dicha Ley"; de donde se deduce lógicamente que entre ambas leyes no existen disposiciones contradictorias ó en conflicto, sino que por el contrario se armonizan y concilian perfectamente, y que ambas fueron dictadas por la Asamblea Legislativa con el propósito de que subsistieran conjunta y simultáneamente.

*Considerando:* por tanto que siendo ineficaz y nulo el mandamiento librado para la prisión del promovente Mr. Hobard S. Bird está el caso comprendido en el número 3 del artículo 483 del Código de Enjuiciamiento Criminal y que no es posible duplicar el mandamiento como lo propone el Ministerio Fiscal en su escrito, porque habiendo quedado anulada y sin ningún valor la sentencia pronunciada por el Juez Sr. Aponte, nulo ó ilegal resultaría cualquier mandamiento que se librara para su ejecución.

*Vistas* las disposiciones legales citadas y la resolución dic-

punishment upon offenders; nor any power conferred by law upon any public body, tribunal, or officer, to impose or inflict punishment upon offenders"; from which it is to be inferred that among these powers is included the one conferred by aforesaid act of the Legislative Assembly upon this Supreme Court, the District Courts and any other analogous or similar tribunals, duly established in Porto Rico to punish contempts committed against their authority, whether in their presence or in any other manner provided for by said act.

This doctrine is strengthened and confirmed by the very act of the Legislative Assembly, section 3 of which provides that "punishment for a contempt of court under this section shall not bar a criminal prosecution for the same offense conducted by the *Fiscal* of the proper jurisdiction; but where a person so punished is convicted upon such additional prosecution, his previous punishment under this act shall be taken under consideration by the court pronouncing the sentence against him"; whence it is logically to be inferred that there are no contradictory or conflicting provisions in these two laws, but that, on the contrary, they harmonize and agree perfectly, and that both were enacted by the Legislative Assembly with the intention that they should subsist together and at the same time.

The warrant issued for the commitment of the petitioner, Hobart S. Bird, being therefore inoperative and void, it comes under the provisions of paragraph 3, section 483, of the Code of Criminal Procedure, and the writ, as proposed by the *Fiscal* in his brief, cannot be duplicated, because the judgment rendered by Judge Aponte being null and void, any writ issued for the execution thereof would likewise be null and void.

In view of the legal provisions cited and the decision of this Supreme Court, delivered May 1, 1903, 3 Porto Rico Reports 501, in a similar proceeding instituted by said

tada por esta Corte Suprema en 1 de Mayo de 1903, en otro expediente análogo promovido por el mismo Hobart S. Bird, á virtud de sentencia pronunciada contra él por el Tribunal de Distrito de San Juan por el mismo delito de desacato.

*Se declara* con lugar la solicitud de excarcelación presentada por el peticionario Mr. Hobart S. Bird, y en su consecuencia queda definitivamente en libertad, alzándose la fianza que tenía prestada.

Juez concurrente: *Sr. Hernández.*

El Juez Asociado Sr. Sulzbacher concurrió también fundando su voto en las razones expresadas en su opinión.

Juez disidente: *Sr. MacLeary.*

El Juez Asociado Sr. Figueras no formó Tribunal en la vista de este caso.

------

*Opinión concurrente del Juez Asociado Sr. Sulzbacher.*

Al firmar la sentencia dictada por la mayoría de los Jueces de este Tribunal hice constar lo siguiente: "Estoy de acuerdo con el resultado final de la sentencia subordinándola á las conclusiones legales expresadas en mi opinión particular." Teniendo esto en cuenta he creido necesario hacer una exposición detallada de los hechos en el presente caso.

En la Corte de Distrito de Mayagüez, Hobard S. Bird fué juzgado culpable del delito de desacato á dicho Tribunal. Se expidió una orden de arresto y al verificarse su detención en San Juan él acudió ante este Tribunal en solicitud de un auto de "habeas corpus."

De dicha solicitud y de los autos de dicha Corte de Distrito resulta, que el "San Juan News", periódico que vé la luz en esta ciudad, publicó un artículo que la Corte de Distrito de Mayagüez consideró injurioso. El artículo en cuestión se refería á un juicio por jurado que tuvo lugar en Mayagüez, en el que hizo las veces de Juez Presidente el

Hobart S. Bird, on the occasion of a judgment rendered against him by the District Court of San Juan, for the same offense of contempt of court, the applicaton presented by the petitioner, Hobart S. Bird, is hereby sustained and he is accordingly finally discharged and the bail-bond furnished by him ordered to be cancelled.

Mr. Justice Hernández, concurred.

Mr. Justice Sulzbacher, also concurred, basing his action on the reasons set forth in his opinion.

Mr. Justice MacLeary dissented.

Mr. Justice Figueras did not sit at the hearing of this case.

*Concurring Opinion of Mr. Justice Sulzbacher.*

In signing the opinion of the majority of the court I stated: "I concur in the result, subject to the legal conclusions expressed in my separate opinion." With that end in view I deem it necessary to make a full statement of the facts in the case.

In the District Court of Mayagüez Hobart S. Bird was found guilty of contempt of court. A warrant was issued, and upon his arrest in San Juan, he applied to this court for a writ of *habeas corpus*.

From the petition and the record of the District Court it appears that "The San Juan News," a newspaper published in San Juan, contained an article which the District Court of Mayagüez considered libelous and contemptuous. The

Hon. Arturo Aponte y quien cumpliendo con las prescripciones de la ley en semejantes casos, constituyó solo el Tribunal en dicha causa.

La vista de la causa por desacato se vió ante el Hon. Arturo Aponte. El acusado Bird no compareció, habiendo sido sin embargo representado por su abogado defensor, quien solicitó la suspensión de la causa en vista de la ausencia de su defendido quien pidió á la corte que se citasen los testigos de la defensa. Existen también en los autos varios telegramas que el mencionado Bird dirigió al Hon. Arturo Aponte pidiendo que se suspendiese la vista de su causa debido á que el día anterior al en que había sido citado para comparecer en Mayagüez, lo había sido también para hacerlo en San Juan, en otra causa por libelo. Su solicitud fué denegada y el Hon. Arturo Aponte llevó á cabo la vista de la causa en ausencia de Bird, quien fué convicto y condenado á quince días de cárcel y al pago de una multa de cien dollars.

Al hacerse la argumentación ante este este Tribunal con respecto á la solicitud del presente auto de "habeas corpus" el Hon. Fiscal en su carácter de representante del "Pueblo de Puerto Rico", propuso al Tribunal que se concediese dicho auto y se pusiese en libertad al preso, fundándose en que la orden de arresto era defectuosa y no llenaba los requisitos contenidos en el artículo 3 de una Ley aprobada por la Asamblea Legislativa de Puerto Rico el 1 de Marzo de 1902, titulada "Ley definiendo el delito de desacato y disponiendo la pena correspondiente" y la cual aparece en los "Estatutos Revisados de Puerto Rico."

El Fiscal alegó que la orden de arresto había sido firmada por el Secretario de la Corte y no por el Juez sentenciador: que se dejó de consignar el hecho ó hechos constitutivos del desacato: que no se llenaron los requisitos que establece la ley antes mencionada, y que la sentencia era por consiguiente nula y sin efecto. Y en apoyo de sus argumentos, el representante del "Pueblo de Puerto Rico" manifestó

article had reference to a certain trial by jury in which the Hon. Arturo Aponte was the presiding judge, and, as authorized by law in such cases, he alone constituted the District Court for the purpose of that case. At the trial of the contempt proceeding before the Hon. Arturo Aponte, Bird, the defendant, was not present. He appeared by attorney, who asked for a continuance of the case on account of his client's absence, and also moved the court to summon witnesses for his defense. There are also found in the record telegrams from said Bird, directed to the Hon. Arturo Aponte, requesting him that his trial be continued for the reason that he had also been summoned to appear before the District Court of San Juan in another libel suit for the day preceding the one on which he was required to be at Mayagüez. All these requests and motions were denied and the Hon. Arturo Aponte tried the case in the absence of Bird, convicting him and imposing a sentence of fifteen days in jail and to pay a fine of one hundred dollars.

At the hearing of the application for the writ of *habeas corpus* before this court, the Hon. *Fiscal*, representing the People of Porto Rico, moved the court to grant the writ of *habeas corpus*, and to discharge the prisoner for the reason that the warrant for commitment was defective and did not comply with section 3 of the Act of the Legislative Assembly of Porto Rico, approved March 1, 1902, and entitled "An act defining the offense of contempt of court and providing for the punishment thereof", and which appears in the so-called "Revised Statutes".

That the warrant had been signed by the clerk of the court instead of the judge delivering the sentence; that it failed to set forth the act or acts constituting the contempt, or any of the requirements prescribed by the said act of the legislature; and that therefore the sentence in said case was invalid and inoperative. In support of this motion the

que este Tribunal había, en caso idéntico al presente, decidido una cuestión de la misma índole concediendo el auto y poniendo en libertad al acusado.

El caso á que el Fiscal se refiere fué decidido el día 1 de Mayo de 1903.

El artículo 3 antes citado dice como sigue:

"Sección 3.—(146)—Cuando se comete un desacato á la inmediata presencia y vista del Tribunal, el correspondiente castigo podrá imponerse en el acto por el Tribunal ó Juez Presidente del mismo. Cuando el desacato no se comete en la forma indicada, la persona ó personas acusadas de haberlo cometido, deberán ser notificadas de la acusación, concediéndoseles un plazo razonable para defenderse contra ella; y siempre que alguna persona fuere multada ó encarcelada por desacato á un Tribunal, deberá firmarse por el Juez sentenciador una orden ó mandamiento para dicha multa ó prisión, consignándose en el mismo el acto ó actos constitutivos de dicho desacato, así como la fecha y lugar de su comisión y circunstancias de la misma, con especificación de la sentencia del Tribunal, sin lo cual dicha sentencia quedará enteramente nula y sin efecto."........

Con fecha posterior el Hon. Fiscal compareció ante este Tribunal solicitando permiso para presentar un alegato, habiéndose accedido á su solicitud. En dicho escrito se alega que la ley á que antes se ha hecho referencia, aprobada por la Legislatura, fué derogada en virtud de.la aprobación del Código Penal, que también contiene una ley con respecto al delito de desacato á los Tribunales. La primera de dichas leyes se aprobó el 1 de Marzo de 1902, y comenzó á regir el día de su aprobación. El Código Penal, que también fué aprobado el día 1 de Marzo de 1902, entró en vigor el 1 de Julio del mismo año, alegándose por consiguiente, que la primera de dichas leyes estuvo en vigor solamente desde el 1 de Marzo hasta el 1 de Julio, en cuya última fecha fué derogada por la ley de desacato contenida en el Código Penal.

La aceptación de semejante criterio equivaldría desde luego, á que este Tribunal debería revocar la sentencia que dictara anteriormente y la jurisprudencia sentada mediante la misma.

said representative of the People of Porto Rico also stated that this court, in a similar or identical case, had decided this same question, and that the writ was then granted and the prisoner discharged. This case was decided on the 1st of May, 1902. Said section reads:

"Section 3.—(146)—When a criminal contempt is committed in the immediate presence and view of the court, the punishment therefor may be inflicted immediately by the court or the presiding judge thereof. When such contempt is not so committed, the person or persons charged therewith must be notified of the accusation and be given reasonable time to defend against such charge; and whenever a person is fined or committed to jail for a contempt of court, an order or warrant for such fine or imprisonment must be signed by the judge delivering such sentence, setting forth the act or acts constituting such contempt, with the time and place of the commission thereof, and the circumstance thereof, and specifying the sentence of the court; otherwise such sentence will be wholly invalid and inoperative.

"Punishment for contempt of court under this section shall not bar a criminal prosecution for the same offense conducted by the Fiscal of the proper jurisdiction, but where a person so punished is convicted upon such additional prosecution his previous punishment under this Act shall be taken into consideration by the court pronouncing the sentence against him."

On a subsequent date the Hon. *Fiscal* appeared in court and asked leave to file a brief, and his motion was granted. By this brief it is claimed that the above-mentioned act of the legislature was repealed by the enactment of the Penal Code, which also contains a law in reference to contempt of court. The former act, which was approved on March 1, 1902, took effect on the day of its passage, whilst the Penal Code, which was also approved on March 1, 1902, by its provision took effect on July 1, 1902; therefore it is claimed the first act would only be in force from the 1st of March until the 1st of July, when it would be superseded by the laws of contempt contained in the Penal Code. The effect of this position would virtually be that this court

Tenemos pués, que la cuestión principal que hemos de dilucidar es la siguiente : ¿Cuál de las dos leyes sobre desacato á los tribunales está en vigor en la Isla de Puerto Rico; la primera contenida en los "Estatutos Revisados" ó la segunda que forma parte del Código Penal?

Los Tribunales no son infalibles. Deberían estar dispuestos á modificar su criterio, á aceptar nuevas teorías y aún á revocar sus sentencias cuando descubren la comisión de errores en las resoluciones judiciales dictadas por ellos anteriormente. Estos cambios, deberían sin embargo, hacerse con la mayor cautela pues es sabido que la comunidad tiene en consideración la jurisprudencia sentada por los Tribunales Supremos al hacer sus transacciones y al intentar entrar en litigios.

Existen principios de jurisprudencia americana en la interpretación de las leyes que se relacionan con estas cuestiones. Una ley posterior deroga otra aprobada anteriormente. Cuando existen dos leyes que versan sobre la misma materia, el tribunal debería, á serle posible, interpretarlas conjuntamente y harmonizarlas. Pero si resultare imposible hacerlo y que dichas leyes son absolutamente incompatibles y en conflicto la una con la otra, ninguna de las dos está en vigor.

A fin de llegar á conclusiones lógicas y razonables, los Tribunales deberían tratar de cerciorarse de la verdadera intención de la Legislatura, y esto puede hacerse frecuentemente si se tiene en cuenta el estado de cosas que existía en la época de la aprobación de la ley.

Durante la soberanía española no se conocía el castigo por desacato á un Tribunal, en la forma que existe en los Estados Unidos ; pero cuando la "Ley Foraker" estableció los Tribunales judiciales en esta Isla, convirtiéndolos en Tribunales americanos, se concedió desde luego el poder inherente para la imposición de penas por el delito de desacato. La Legislatura, sin embargo, ha creido conveniente definir tal poder, determinar el castigo que un tribunal puede

should reverse its former decisions and the precedent established thereby.

The question before this court is therefore chiefly this: What law in reference to contempt of court is in force in Porto Rico, the first one contained in the Revised Statutes, or the one of the Penal Code?

Courts are not infallible. They should be willing to change their views, adopt new theories, and even reverse themselves when they discover that, by their former decisions, errors have been committed. These revocations, however, must be exercised with the greatest caution. The community relies upon the decisions of the Supreme Courts in their transactions and in the advisability of litigations.

There are well-known principles of American jurisprudence in the construction of statutes. A subsequent law often repeals a prior one. When there are two statutes upon the same subject, a court should, if possible, construe them together and harmonize them; but if it should appear that this cannot be done, and that they are incompatible and in absolute conflict, neither law is in force.

To arrive at fair and logical conclusions courts should always endeavor to ascertain the real intention of the legislator and this can frequently be determined by considering all surrounding conditions existing at the time of the passage of the laws.

During the Spanish sovereignty, punishment for contempt of court, to the extent of its existence in the United States, was not known, but when the "Foraker Act" established the judicial tribunals on this island, thereby making them American courts, they became at once vested with the

imponer, y establecer ciertas reglas y procedimientos para el cumplimiento de la ley.

El poder de un Tribunal para la imposición de penas por el delito de desacato, es una prerrogativa extraordinaria. Los Tribunales son los Jueces y los Jueces son los Tribunales. Si se injuria á una persona en su carácter de Juez, el hecho constituye un desacato al Tribunal. Este procedimiento es casi una contravención á la antigua máxima legal "nemo propia causa judex esse debet". Los jueces son humanos. Hay ocasiones en que puede que no le sea posible discernir y juzgar el alcance de la ofensa inferida á un tribunal ó á un juez. La línea divisoria es á veces estrecha y á menudo es necesario hacer uso del criterio más discreto é imparcial y del mayor grado de prudencia, cautela, justicia é independencia judicial á fin de poder juzgar donde termina la personalidad individual y donde comienza el carácter judicial.

Por esta razón las autoridades han mantenido el criterio. de que siempre que se trata de la concesión de privilegios extraordinarios, los preceptos de las leyes deben cumplirse extrictamente. Son de precepto y no de consejo, y cualquiera desviación anula los procedimientos. La Legislatura en el presente caso ha llegado hasta declarar que si la orden de arresto expedida en una causa por desacato no contiene ciertos requisitos "*la sentencia será absolutamente nula y sin efecto.*"

Podría argüirse que si la primera orden de arresto no llenaba los requisitos de la ley, una segunda orden podría ser expedida. Este procedimiento sería, sin embargo, erróneo, pues tratando el autor Church acerca del auto de "Habeas Corpus", expone la siguiente doctrina:

"Cuando una persona declarada culpable de desacato, haya sido encarcelada en virtud de [un mandamiento de prisión que sea ilegal, no podrá ser detenida mediante otro mandamiento de prisión que haya sido expedido con posterioridad, y sea legal.

Sin embargo, esta regla no sería aplicable si el primer mandamiento hubiese sido solamente informal, y no ilegal."

inherent power to punish for contempt. The legislature, however, has seen fit to define this power, to prescribe the punishment which a court may impose and to outline certain rules and proceedings to carry out the law.

The power of a court to punish for contempt is an extraordinary prerogative. The courts are the judges and the judges are the courts. If a person, as a judge, is libeled, it is contempt of court. This proceeding is almost in contravention to the ancient legal maxim *"nemo propia causa judex esse debet".* Judges are human. They may not always be capable of discriminating and discerning how far the court and how far the judge has been offended. The line of distinction is narrow, and it requires frequently a keen scrutiny of the most discreet and impartial judgment, of prudence, caution, fairness and judicial independence, to determine where the individual personality ends, and where the judicial character begins.

For this reason the authorities have held that whenever extraordinary privileges are conceded, such laws must be strictly followed. They are mandatory and not directory, and any deviation makes the proceedings void. The legislature here has gone so far as to declare that if a warrant in a contempt proceeding does not contain certain provisions "the sentence shall be wholly invalid and inoperative."

It might be contended that a new warrant of commitment could be issued, if the first one did not comply with the law. This would, seemingly, be erroneous, for Church on Habeas Corpus lays down the following doctrine:

"Where a person adjudged to be in contempt has been taken to jail under an illegal commitment, he cannot be held under a legal commitment subsequently made out. This rule would not apply, however, where the first commitment was merely informal and not illegal."

En el presente caso ante este Tribunal la orden de arresto no fué defectuosa, sino nula en absoluto. En verdad, es un principio bien conocido é inspirado en la más sana lógica, que cuando un Tribunal ha cometido un error al decidir cuestiones de semejante naturaleza no tiene derecho á molestar por segunda vez á una persona. Sus facultades terminan allí.

Por lo tanto, si la primera de las leyes aquí mencionadas y la cual consta en los Estatutos Revisados, está aún en vigor, y si la orden de arresto es nula y sin efecto, la sentencia de la Corte es nula y el acusado debe ser puesto en libertad.

Después de un nuevo examen de los autos de esta causa vengo en conocimiento también de que la Corte dejó de cumplir desde el primer momento los preceptos de la ley contenida en los Estatutos Revisados.

El artículo 3 de dicha Ley nos dice que cuando no se comete el desacato en la presencia inmediata del Tribunal "la persona ó personas acusadas de haberlo cometido, deberán ser notificadas de la acusación concediéndoles un plazo razonable para defenderse contra ella". Debe, pués, existir una acusación: y ésta, según la definición que nos dan las autoridades, es "un cargo que se formula ante un funcionario competente contra alguna persona por la comisión de un delito ó de una falta á fin de imponerle el debido castigo."

Los autos de la Corte de Distrito de Mayagüez obran en poder de este Tribunal sin que los mismos contengan acusación alguna. El Hon. Arturo Aponte obró enteramente de acuerdo con su propia moción. Las actuaciones se fundan en la orden que el Juez expidiera para la comparecencia del acusado la cual empieza como sigue: "ORDEN CON MOTIVO DE DESACATO. Arturo Aponte, Juez Presidente de la Corte de Distrito de Puerto Rico, Distrito de Mayagüez, comparece, y por ésta su propia moción dice: etc."

La sentencia dictada por la Corte, después de la celebración del juicio, no expresa en manera alguna el hecho ó

In the case before this court the warrant was not informal, but absolutely void. The law is well settled, and based upon sound logic, that when a court in such incidents has, by its own errors, failed, it is not permitted to harass and vex a person the second time; its faculties are exhausted.

Therefore, if the first mentioned law contained in the Revised Statutes is still in force, and the warrant of commitment being invalid and inoperative, the sentence of the court is void and the prisoner must be discharged.

From a further examination of the record I also find that the court has failed to comply with the law from its incipiency.

Section 3 indicates that when the contempt is not committed in the immediate presence of the court "the person or persons charged therewith must be notified of the accusation and be given a reasonable time to defend against such charge." There must be an accusation. An accusation as defined by the authorities is a "charge made to a competent officer against one who has committed a crime or misdemeanor, so that he may be brought to justice."

The record of the District Court of Mayagüez is before this court. It does not contain any accusation of any kind. The Hon. Arturo Aponte acted entirely upon his own motion. The basis of the proceedings is his own order to show cause. It begins:

"Rule for contempt. Now comes Arturo Aponte, presiding judge of the District Court of Porto Rico, for the District of Mayagüez, upon his own motion states," etc.

The judgment or sentence of the court, after the trial

hechos constitutivos del desacato, así como tampoco se hace constar la fecha ó el lugar en que aquél se cometiera. Verdad es que la ley no requiere que lo que precede se haga constar en la sentencia, pero también es cierto que la ley es imperativa en cuanto á la orden de arresto ó mandamiento y debe contener dichos requisitos. La sentencia se funda en l'a orden de arresto. Si la primera es defectuosa la segunda es necesariamente fatal. Y aún cuando fuese permitido reformar y modificar la orden, lo cual estimo que no puede hacerse, no habría nada en que fundar la reforma ó modificación. Es por lo tanto evidente que todas las actuaciones en el presente caso de desacato ante el Juez Aponte han sido nulas "*ab initio*".

Dicho artículo 3 dice también "que se concederá al acusado un plazo razonable para defenderse contra el cargo que se le haya hecho." Si el Juez Aponte creyó que á Bird le era posible comparecer en la fecha para la cual fué citado y que desobedeció la orden de citación, dicho funcionario hubiera podido expedir una orden de arresto y castigarle por la comisión de otro desacato. Pero el Juez Aponte carecía de autoridad para continuar la tramitación de la causa durante la ausencia del acusado *a fortiori*, habiendo su abogado defensor solicitado de la Corte la citación de los testigos para la defensa de su cliente.

El Tribunal Supremo de California resolvió esta cuestión ampliamente en el caso de McClatchy *v.* Superior Court, Vol. 119, Pág. 419. Se trataba de una acusación hecha contra el director de un periódico por desacato á un Tribunal, alegándose en dicha acusación que el periódico había publicado informes groseramente falsos é inexactos tendentes á desprestigiar dicha Corte y á provocar el desprecio y la prevención del público, alegándose al mismo tiempo que dichos informes eran una intervención ilegal en los asuntos de dicho Tribunal. Al celebrarse el juicio de la causa el director acusado presentó ciertas pruebas con objeto de demostrar que la información contenida en su periódico era ver-

does not set forth, in any direct manner, the act or acts constituting the contempt, nor the time and place of the commission thereof. True it is that the statute does not require this, but the law is imperative that a warrant or commitment must contain those requisites. The judgment forms the basis for the warrant. If the former is insufficient the latter must naturally be fatal. And even if it were permitted to reform and amend the warrant, which, however, I hold could not be permitted, there would be nothing from which to amend. It is therefore evident that the whole contempt proceedings before Judge Aponte were void *ab initio*.

But said section 3 also says: "and be given a reasonable time to defend against said charge". If Judge Aponte considered that Bird could have been before his court at the time he was required to appear, but disregarded the order, he could have issued a warrant for his arrest, and punished him for another contempt; but he had no authority to proceed with the case during his absence, *a fortiori*, when his attorney made a proper application to the court for witnesses to be summoned for the defense of his client.

The Supreme Court of California in the suit of *McClatchy* v. *Superior Court*, 119, p. 419, decided this question fully.

This was a case where a charge for contempt of court was made against the publisher of a newspaper, alleging publications therein which were grossly inaccurate and false, and intended to degrade the said court, and incite public prejudice and contempt against it, and were unlawful interferences with the proceedings of the court. At the trial of the case the defendant, the publisher, offered certain testimony to show that the publication in the newspaper was true. This the court denied, and the case being carried to the Supreme Court, we find the following expressions by that tribunal:

dadera. La Corte rehusó la admisión de dichas pruebas y llevado el asunto ante el Tribunal Supremo exprésase éste en la forma siguiente:

"La parte á quien se acusó de desacato, aún cuando el procedimiento sea de índole más ó menos sumario, tiene el mismo derecho inalienable á ser oido en su defensa, particularmente en casos como el presente en que se trata de la mera interpretación de un desacato indirecto, como tendría si se le acusase de haber cometido un asesinato ú otro crimen cualquiera."

Refiriéndose al mismo tema tomamos á "Rapalje" quien en el artículo 111 de su obra sobre "desacatos" nos dice:

"Existen dos clases de desacato á un Tribunal: El que se comete en su presencia y aquél que se comete fuera de la presencia del Tribunal. Para el castigo del primero, por medio de prisión y multa, no hay necesidad de la instrucción de causa alguna en contra del acusado; pero para el castigo del segundo, empleando también las mismas penas que en el primer caso, debe permitirse al acusado presentar sus pruebas y hacer los argumentos necesarios para su defensa. Si se adoptase otro procedimiento, cualquiera sentencia que la Corte dictase sería absolutamente nula."

Al continuar el Tribunal hace referencia á la causa de State v. Orleans Civil Judges, 32 La. Ann. 1256, 1262:

"A la acusación de desacato no debería en ningún caso seguir una sentencia imponiendo la pena de cárcel á menos que á dicha sentencia preceda una orden citando al acusado para su comparecencia en el juicio y á menos que se le haya permitido presentar sus pruebas y hacer sus argumentos; habiéndose resuelto por los Tribunales que cualquier otro procedimiento que se adopte sería privar al acusado de los derechos que la ley le concede, que las actuaciones en la causa no estarían de acuerdo con la ley de la nación y que la sentencia sería nula."

Dicho Tribunal también cita lo que á continuación se expresa, tomándolo de una resolución del Tribunal Supremo de los Estados Unidos, que es el más alto de los de la nación:

"Existe un principio tan antiguo como la ley misma, y el cual debería ser respetado ahora más que nunca, consistiendo el mismo en que nadie será condenado sin haber antes comparecido ante el Tribunal, lo cual quiere decir que no se podrá condenar á nadie que no haya sido debidamente citado para comparecer en juicio y á quien no se hayan proporcionado los medios para ser oido en su defensa. Una sentencia que haya sido dictada habién-

"And the party charged therewith (contempt) although the proceeding is more or less summary in character, has the same inalienable right to be heard in his defense, especially in instances like the present, of a mere constructive contempt, as he would against the charge of murder, or any other crime."

On this subject it is said in Rapalje on Contempts, section 111:

"Contempt of court is of two kinds—that which is committed in open court, and that which is committed out of view and hearing of the court. For the punishment of the first, by commitment and fine, no proceeding need be taken contradictorily with the offender, but for the punishment of the latter and by the same means, the offender must be allowed to offer evidence and argument in his defense; otherwise any judgment which the court may pronounce will be absolutely void."

The court, continuing, refers to the case of *State* v. *Orleans Civil Judges*, 32 La. Ann. 1256, 1262:

"The charge of contempt should not in any case be followed by a sentence of imprisonment unless after a rule to show cause has been granted, and the party defendant therein is permitted to offer evidence and argument. And it is held that anything else than that would constitute a want of 'due process of law and proceeding not in accord with the law of the land' rendering the judgment void."

The court then cities a decision of the Supreme Court of the United States, the highest tribunal in the land:

"It is a rule as old as law, and never more to be respected than now, that no one shall be personally bound until he has had his day in court, by which is meant until he has been duly cited to appear and has been afforded an opportunity to be heard. Judgment without such citation and opportunity wants all the attributes of a judicial determination; it is judicial usurpation and oppression, and can never be upheld where justice is duly administered." *Galpin* v. *Page*, 18 Wall. 350.

In continuation the Supreme Court of California says:

dose omitido el citar al acusado y el proporcionarle la oportunidad para su defensa, carece de todos los requisitos de una resolución judicial; es simplemente una usurpación y opresión judicial y no podría ser nunca confirmada por un Tribunal que administrase justicia debidamente." Galpin *v.* Page 18 Wall. 350 U. S.

Continuando el Tribunal Supremo de California dice:

"Las anteriores consideraciones demuestran que al celebrarse el juicio de la causa en la Corte Inferior se privó al solicitante de los derechos que la ley le concede y que son tan indispensables para la validez de una sentencia.; por cuya razón la resolución en la cual se le condena por desacato queda anulada."

En el caso ante el Tribunal Supremo de California el director del periódico de referencia compareció ante la Corte al verificarse el juicio de su causa, mientras que en la Corte de Distrito de Mayagüez el acusado Bird no estaba presente. El autor Church tratando sobre "Habeas Corpus" expone la siguiente doctrina:

"Una convicción sumaria, que no demuestra que las pruebas en contra del preso, fueron presentadas en su presencia, en el acto de examinársele, es nula; y esta regla es aplicable del mismo modo á mandamientos de prisión, que tienen de por sí el efecto de convicciones. Cuando un informe al mandamiento para un auto de *habeas corpus ad subjiciendum* deja demostrar que las pruebas practicadas ante el Juez que expidió el mandamiento de prisión, fueron presentadas en la presencia de la parte que ha de ponerse preso, el Tribunal la libertará de la custodia."

Tenemos, pues, que considerar si dicha ley fué ó no derogada por el Código Penal.

El artículo 145 de dicho Código prescribe que:

"Toda persona que cometiere alguno de los desacatos relacionados á continuación será reo de misdemeanor."

El presente caso podría considerarse como comprendido dentro de dicho artículo.

Pero el Código Penal considera el desacato á un Tribunal como "misdemeanor" y nos encontramos con la siguiente proposición: ¿que es un "misdemeanor" y cómo se castigan, *persiguen* y *tramitan* las faltas de dicha índole? Los siguientes artículos de la Ley responden á las preguntas anteriores:

"Art. 14.—"Felony" es un crimen castigado con la pena de muerte ó

"These considerations make it manifest that petitioner at his trial in the court below was denied that 'due process of law' requisite to a valid conviction; and for that reason the order convicting him of contempt must be annulled".

In the case before the Supreme Court of California the editor of the newspaper was personally in court during the trial, whilst in the case before this District Court of Mayagüez, the editor Bird was not even present. Church on Habeas Corpus lays down the following doctrine:

"A summary conviction which does not show that evidence against the prisoner on his examination was given in his presence is bad; and the rule applies as well to warrants of commitment, which operate in themselves as convictions. On the return of warrant to a writ of *habeas corpus ad subjiciendum,* and which fails to show that the evidence heard before the committing magistrate was given in the presence of the party to be charged the court will release the prisoner from custody."

We must next consider whether said law was repealed by the Penal Code, which, by its section 14, provides, that "every person guilty of any contempt of court, of either of the following kinds, is guilty of a misdemeanor." Art. 7.— "The publication of a false or grossly inaccurate report of the proceedings of any court." The present case might perhaps come within said article.

The Code provides that contempt of court shall be a misdemeanor, and we are met by the proposition: what is a misdemeanor, how are offenses of that character prosecuted and tried and how punished? The following sections of the Penal Code answer the questions.

"Section 14.—A felony is a crime which is punishable with death, or by imprisonment in the penitentiary. Every other crime is a misdemeanor....."

"Section 16.—Except in cases where a different punishment is prescribed

de presidio. " Misdemeanor " comprende todos los demás delitos." (Código Penal)

' "Art. 16.—Excepto en los casos en que se prescriba otra pena por este Código, toda delincuencia declarada "misdemeanor" apareja pena de cárcel por un término máximo de dos años, ó multa máxima de doscientos cincuenta dollars ó ambas penas." (Código Penal)

## De la Ley aprobada en Marzo 12 de 1903 :

"Art. 3.—Todo delito respecto del cuál tuviere jurisdicción la Corte de Distrito deberá perseguirse en virtud de acusación presentada por el promotor fiscal, en sala de justicia, y confirmada con su declaración jurada de que la acusación se basa en el testimonio de testigos juramentados por él ó por el Juez de Paz."

## Del Código de Enjuiciamiento Criminal :

" Art. 66.—Todas las formas de alegación en acciones penales, y las reglas por virtud de las cuales se determina la suficiencia de las alegaciones, son las que prescribe este Código.

Art. 67.—La primera alegación de parte del pueblo ó poder público es la acusación.

Art. 68.—La acusación es una alegación escrita hecha por el Fiscal á un tribunal de distrito, en la cual se imputa á una persona la comisión de un delito público.

Art. 69.—Cuando la acusación ha sido presentada se denominará "presentación de cargo" ("presentment") y deberá ser presentada al tribunal y archivada por el secretario del mismo."

Concediendo que el Código Penal derogara la ley general contenida en los Estatutos Revisados, hay que convenir entonces en que el desacato á un tribunal es un "misdemeanor" y que por consiguiente debe aplicarse la ley de Enjuiciamiento Criminal.

Los autos de la Corte de Distrito demuestran de una manera terminante y que no deja lugar á dudas, que al verificarse el juicio de esta causa se omitieron completamente los preceptos de la ley de Enjuiciamiento Criminal.

Y tal omisión no consistió solamente en que dejara el Ministerio Fiscal de presentar la acusación jurada, que imperativamente requiere la ley, sino que ni siquiera tomó dicho funcionario parte en los procedimientos.

El Honorable Arturo Aponte, uno de los Jueces de la Corte de Distrito, vió la causa *sólo*, y semejante procedi-

by this Code every offense declared to be a misdemeanor is punishable by imprisomment in jail not exceeding two years or by a fine not exeeding two hundred and fifty dollars, or by both."

"Section 3.—Every offense of which the District Court has jurisdiction must be prosecuted by information filed by the prosecuting attorney in open court, verified by his affidavit that the information is based upon testimony of witnesses sworn before him or before the justice of the peace;.........."

"Section 66.—All the forms of pleadings in criminal actions, and the rules by which the sufficiency of pleadings is to be determined, are those prescribed by this Code."

"Section 67.—The first pleading on the part of the People is the information."

"Section 68.—The information is an allegation in writing made to a District Court by the prosecuting attorney charging a person with a public offense."

"Section 69.—The information when filed shall be known as the presentment and must be presented to the court and be filed with the clerk thereof."

Granting that the Penal Code repealed the general law contained in the Revised Statutes, and arguing along those lines, contempt of court would be a misdemeanor, and the law of Criminal Procedure must be applied. The record of the District Court in this case plainly shows that the proceedings prescribed by the law of Criminal Procedure were totally ignored. Not alone that the prosecuting officer did not present any sworn information, as imperatively required by law, he did not even take part in the proceedings. The Hon. Arturo Aponte, one of the judges of the District Court, tried the case alone. Such a proceeding is certainly in absolute violation of the existing criminal procedure.

The law creating the District Courts reads as follows:

"Each District Court will be composed of three judges, one of whom shall

miento es una violación absoluta de la ley de Enjuiciamiento Criminal en vigor.

La ley que se relaciona con la organización de las Cortes de Distrito, dice lo siguiente :

"Cada Tribunal de Distrito se compondrá de tres Jueces, entre los cuales uno será Presidente, y los cuales, reunidos todos, constituirán su Sala de Justicia para lo civil y criminal... ................................................................"

Las Cortes de Distrito se componen de tres Jueces, excepto cuando se trate de juicios por jurados, en cuyos casos sólo un Juez constituye el Tribunal, de acuerdo con los preceptos de una ley aprobada por la Asamblea Legislativa. En todos los demás casos, la Corte de Distrito debe componerse de tres Jueces "quienes reunidos todos, constituirán la Sala de Justicia para lo civil y criminal."

Aún cuando la falta de desacato de que se trata se refiriere á los procedimientos de la Corte de Distrito al verificarse un juicio por jurado, en el cual el Juez Aponte constituyó el Tribunal, hay que convenir en que dicho funcionario carecía de jurisdicción para conocer *él sólo* en una causa por desacato considerada como "misdemeanor" por el Código Penal.

No tenía él mas facultades para celebrar este juicio de "misdemeanor" que para celebrarlo por cualquiera otra ofensa de la misma índole.

En un caso reciente ante este Tribunal, "Mauleón Ex Parte", se citó la siguiente de "Ex Parte Schaw, 7 Ohio State, 81" :

"Pero si el Tribunal ha condenado al solicitante por la comisión de una ofensa sobre la cual no tenía jurisdicción, de acuerdo con la ley, resultando que los procedimientos y la sentencia eran manifiestamente *coram non judice* y nulos, la prisión que siguiera á dicha sentencia sería ilegal y el solicitante tendría derecho á ser excarcelado por medio de "habeas corpus."

Refiriéndose á "habeas corpus" tenemos que el autor Church nos dice también :

"Art. 326.—Si resultase que el Tribunal que dictara la sentencia por desacato no hubiera sido legalmente constituido, dicha sentencia estaría desprovista de autoridad y sería nula, teniendo el preso derecho á que se le excarcelase mediante un auto de "habeas corpus"."

be presiding judge and who jointly shall constitute the bench in civil and criminal business........"

Three judges constitute the District Court, except in jury trials, when, in accordance with a certain law of the Insular Legislature, one judge alone can preside, in such cases. In all others the District Court must be composed of three judges, "who jointly constitute a bench for civil and criminal business."

Although the alleged contempt referred to a proceeding of the District Court in a jury trial, where Judge Aponte alone constituted the court, nevertheless he alone had no jurisdiction to try a case of contempt as a misdemeanor. He had no more authority to try this misdemeanor than any other offense of a like category.

In a recent case before this court, *Mauleón, Ex parte,* (ante p. 227); there was cited from *Ex parte Schaw,* 7 Ohio State 81, the following language:

"But if the court has sentenced the relator for an offense over which by law it had no jurisdiction, so that the proceedings and sentence were manifestly *coram non judice,* and void, the imprisonment following such void sentence would have been unlawful and the relator entitled to be discharged on *habeas corpus*".

We also find in Church on Habeas Corpus,

"Section 326.—If it appears that the court rendering a judgment for contempt was not legally constituted, the act is without authority, and void, and the prisoner will be discharged on *habeas corpus.*"

The Code of Criminal Procedure (*Habeas Corpus*), by its section 483 declaring when a prisoner must be discharged on *habeas corpus,* states:

"Article 1.—When the jurisdiction of such court or officer has been exceeded."

Disponiendo la ley de Enjuiciamiento Criminal los casos en que un preso, puede ser excarcelado mediante la expedición de un auto de "Habeas Corpus" nos dice lo siguiente en el inciso primero de su artículo 483:

"1.   Cuando se ha extralimitado la jurisdicción de tal Tribunal ó funcionario."

El Juez Aponte sólo no constituía el Tribunal para juzgar un "misdemeanor"; y aún aceptando la teoria de que la ley contenida en el Código Penal, la cual considera el desacato á un tribunal como "misdemeanor", es la única en vigor en Puerto Rico, los procedimientos son todos nulos, y procede de igual manera que el preso sea puesto en libertad.

Podría propiamente argüirse, que en la celebración de un juicio por "misdemeanor" no hay necesidad de que el acusado comparezca ante la Corte cuando está representado por abogado defensor; pero teniendo en cuenta que esta causa no fué juzgada como "misdemeanor" ni por un tribunal con jurisdicción competente para conocer de dicha falta, no tengo que entrar en consideraciones acerca de si el abogado defensor consintió ó no que se continuare la celebración del juicio en la ausencia de su cliente.

Lo expuesto anteriormente sería bastante para dar por terminado el presente caso, pero tiene este Tribunal otros deberes que cumplir estando por consiguiente obligado á dilucidar las dudas y ambigüedades que puedan presentarse, con objeto de sentar jurisprudencia para la mejor administración de justicia.

Hemos manifestado antes cual ha debido ser el objeto y el fin que se propuso la Legislatura al aprobar leyes para el castigo de desacato á los Tribunales.   De acuerdo con la ley que forma parte de los Estatutos Revisados, cada Corte se convierte en su propio Juez para conocer de tales incidentes, pero si aceptamos el criterio de que el Código Penal derogó aquella Ley, el desacato es un "misdemeanor" del cual deben conocer las Cortes de jurisdicción competente.   La presente causa debió haberse tramitado ante la Corte de Distrito de

Judge Aponte alone did not constitute the court to try a misdemeanor, and upon the theory that the law, as contained in the Penal Code, making contempt of court a misdemeanor to be the only one in existence in Porto Rico, all the proceedings must be void, and the prisoner must likewise be discharged.

It might be contended, and with all propriety, that, at a trial for a misdemeanor, the defendant need not be in court when represented by attorney, but in view of the very fact that this issue was never tried as a misdemeanor, nor by a court having jurisdiction of misdemeanors, I need not consider whether or not the defendant's attorney consented that the trial should proceed during the absence of his client.

These views would dispose of the case, but this court has other functions to perform, and it becomes its duty, when called upon, to solve doubtful and ambigous questions, so as to establish precedents for the better administration of justice.

We have stated before what the object and purpose of the Legislature must have been in enacting laws for the punishment of contempt of court. By the law of the Revised Statutes, each court is made its own judge to try such incidents, but if the Penal Code repeals that law, a contempt is a misdemeanor, which must be referred to and tried by the courts of the proper urisdiction. In this present case, the District Court of Mayagüez and not the Hon. Arturo Aponte alone would have had to try the case, the *Fiscal* of the District Court having first performed all the requirements prescribed by law. The inherent power tacitly granted by the Foraker Law to the courts to punish for contempt would have been taken away by the Penal Code to the effect that if a person would commit a contempt of court against this Supreme Court, and this court not having any

Mayagüez y nó ante el Honorable Arturo Aponte *solamente*.
La facultad inherente que la "Ley Foraker" concedió táci-
tamente á las Cortes para imponer castigos por desacato, les
hubiera sido arrebatada por el Código Penal hasta el extre-
mo que si una persona fuese culpable de desacato á este Tri-
bunal Supremo, careciendo este Tribunal de jurisdicción
criminal en su orígen, sería necesario acudir ante la Corte
de Distrito para el castigo de la falta cometida.   Inconce-
bible é ilógico como parece semejante procedimiento, sería
sin embargo, su consecuencia natural; pero podemos estar
completamente seguros de que no fué ésta la intención de la
Legislatura.

Ambas leyes fueron aprobadas el mismo dia, y si hubiera
sido la idea de la Legislatura el que el Código Penal dero-
gase la Ley general contenida en los Estatutos, aún cuando
el primero comenzó á regir cuatro meses después, hubiéralo
expresado así de manera clara y terminante.   No podría
tampoco arguirse que fué la intención de la Legislatura el
conceder á cada Corte, y á cada Juez, el privilegio de im-
poner castigos por desacato á los Tribunales por un período
de tiempo de cuatro meses solamente y que después de dicha
fecha cada Juez pudiera en ciertos casos, solicitar el recurso
de otros Jueces para que actuasen con él en las causas por
desacato ó acudir ante otro Tribunal con dicho fin.

Podría no obstante arguirse que la derogación es implícita.
El Tribunal Supremo de los Estados Unidos ha sentado la
jurisprudencia de que "las derogaciones implícitas no son
consideradas favorablemente."   Dichas derogaciones ocurren
con poca frecuencia, excepto cuando se fundan en contradic-
ciones, y nunca cuando la ley anterior es suceptible de apli-
cación juntamente con la posterior.   "Ex parte Yerger 8
Wall 105."   Pero teniendo en cuenta la Legislatura la posi-
bilidad y probabilidad de que se desarrollaran incompatibi-
lidades en la aplicación de las leyes, insertó en el Código
Penal los artículos que á continuación se copian á fin de
evitar dichos conflictos:

original jurisdiction, application would have to be made to the District Court to punish the contempt committed. Inconceivable and illogical as this appears it would nevertheless be the only natural consequence, but we can safely assert that such was never the intention of the Legislature.

Both laws were enacted on the same day and had the Legislature intended that the Penal Code should repeal the general law, contained in the Revised Statutes, although the former took effect four months later, it would have indicated its purpose in plain terms. It could not be consistently urged that that body should have aimed to grant each court and each judge the prerogative to punish contempts of court for the period of four months only, and thereafter, in some instances, to call in other judges to perform those functions with them or have another tribunal to do so.

It could be contended that the repeal is by implication. The Supreme Court of the United States has held : "Repeals by implication are not favored. They are seldom, except on the ground of repugnance, and never when the former act can stand together with the new act." *Ex parte Yerger*, 8 Wall. 105. But the Legislature having in mind possibilities and probalities and so as to avoid conflicts, enacted the following sections in the same Penal Code.

"Section 6.—Nothing in this act affects any of the statutes, laws, orders or parts thereof enacted by the Congress of the United States, the Executive Council under power granted by law, or the Legislative Assembly of Porto Rico, except so far as they have been repealed or affected by subsequent laws."

"Section 7.—This code does not affect any power conferred by law upon any court martial, or military authority or other officer, to impose or inflict punishment upon offenders; nor any power conferred by law upon any public body, tribunal, or officer, to impose or inflict punishment upon offenders."

From these sections it appears that the Legislature did

"Art. 6.—Nada de lo dispuesto en este Código afecta á ninguno de los Estatutos, leyes, órdenes, ó partes de los mismos, aprobados por el Congreso de los Estados Unidos, por el Consejo Ejecutivo, dentro de las atribuciones que la léy le concede, ó por la Asamblea Legislativa de Puerto Rico, excepto en cuanto hubieren sido revocados ó estuvieren afectados por leyes subsiguientes.

Art. 7.—Este Código no afecta á ningún poder conferido por la Ley á cualquier consejo de guerra, autoridad, ú oficial militar para imponer castigos á delincuentes; ni ningún poder conferido por la ley á cualquier cuerpo, tribunal, ó funcionario público, para castigar delincuentes."

De los procedentes artículos se deduce que la Legislatura no trató de derogar, sino por el contrario de dejar intacta la ley privilegiada de los Estatutos Revisados "Definiendo el delito de desacato, y disponiendo la pena correspondiente" siendo *"la misma una ley aprobada por la Legislatura de Puerto Rico"* mediante *"la cual se imponen castigos á los delincuentes."*

Se admite que el Código Penal fué tomado de los Estatutos del Estado de Montana y que éstos son una copia de los de California. La fraseología de los Estatutos aprobados aquí es exactamente igual á la de los de Montana. Es una doctrina bien conocida que cuando un Estado adopta las leyes de otro Estado la aceptación de éstas lleva consigo la aceptación de las resoluciones del Tribunal Supremo del Estado en el cual tuvieran su orígen.

En las resoluciones del Tribunal Supremo de Montana Vol. 24 "State v. District Court, 35" encontramos lo siguiente:

"Una persona culpable de desacato á un tribunal por haber desobedecido voluntariamente una orden de "injunction" que haya sido legalmente expedida puede ser castigada sumariamente en la forma prescrita en "Title V," supra, ó pueden aplicársele las disposiciones del artículo 293 del Código Penal mediante el cual la falta de desacato á un tribunal está concretamente considerada como "misdemeanor."

"Los Estatutos de Montana que versan sobre desacatos á los Tribunales fueron tomados de los del Estado de California donde han sido examinados y aplicados constantemente. (Ex parte Gould, 99 Cal. 1112, 21 L. R. A 751; Cosbey v. Superior Court McClatchy v. Superior Court; 119 Cal. 419.)

not intend to repeal, but on the contrary, to leave intact the prerogative law of the Revised Statutes, "defining the offense of contempt of court," etc. The same being "a law of the Legislature of Porto Rico," and thereby "imposing and inflicting punishment on offenders."

It is conceded, that the Penal Code was copied from the statutes of Montana, and the latter from those of California. The language of the statute here is verbatim that of Montana. When one state adopts the laws of another state they are accepted, together with the decisions of the Supreme Court of the original state, is a well established doctrine.

We find in the decisions of the Supreme Court of Montana, vol. 24, *State* v. *District Court*, 35, the following:

" One guilty of contempt of court by wilful disobedience of an injunction order lawfully issued may be punished under the summary procedure provided for by Title V, supra, or he may be dealt with under the Penal Code as for a misdemeanor, under section 293 where a contempt of court is specifically made a misdemeanor.

"The statutes of contempt of court in Montana were taken from California, where they have been examined and passed upon repeatedly. (*Ex parte Gould*, 99 Cal. 360, 21 L. R. A. 751; *McClatchy* v. *Superior Court*, 119 Cal. 419, 51 Pac. 696, 39 L. R. A. 691.) In *ex parte Hollis*, 59 Cal. 408, followed in *Ex parte Gould*, supra, contempt of court is decided to be a public offense, punishable by indictment or information, as well as by the summary proceedings prescribed by the Code of Civil Procedure."

It is therefore evident that in the States of Montana and California two concurrent remedies exist to punish contempts of court; one by the summary proceeding and the other trying it as a misdemeanor.

Here likewise we have two concurrent proceedings; the one by applying the law of contempt of the Revised Statutes,

En Ex parte Hollis, 59 Cal. 408, al cual sigue Ex parte Gould, supra, se ha mantenido el criterio de que desacato á un tribunal es una ofensa pública *penable por medio de acusación ó denuncia como también* mediante el procedimiento sumario del Código de Enjuiciamiento Civil."

Es por lo tanto evidente, que en los Estados de Montana y California existen dos medios para la imposición de castigos por desacato á los Tribunales; uno mediante el procedimiento sumario y el otro juzgando la ofensa como "misdemeanor."

En Puerto Rico tenemos también dos procedimientos similares, el primero por medio de la aplicación de la ley de desacato contenida en los Estatutos Revisados, y el segundo haciendo uso de lo que sobre dicho asunto nos dice el Código Penal. Ambas leyes pueden aplicarse conjuntamente, No son contradictorias; no existen fundamentos para su incompatibilidad.

Soy por consiguiente de opinión que pueden aplicarse las sentencias dictadas por los Tribunales Supremos de Montana y California y que de igual manera que en aquellos Estados, existen en Puerto Rico dos procedimientos similares para castigar la ofensa de desacato á un Tribunal, pero sería necesario cumplir estrictamente con los requisitos de una ú otra de dichas leyes.

En el presente caso, sin embargo, no se ha aplicado ninguna de las dos leyes á que hemos hecho referencia.

----

*Opinión disidente del Juez Asociado Sr. MacLeary.*

El suplicante en este caso, Hobart S. Bird, en 14 de Octubre de 1903, fué sentenciado por el Tribunal de Distrito de Mayagüez, á multa y prisión, por desacato á aquél Tribunal; y al ser detenido por el Teniente Tallada, de la Policía Insular, pidió y obtuvo, un auto de Habeas Corpus de este Tribunal.

the other following the Penal Code. Both laws can well stand together. They are not in conflict; there is no ground of repugnance.

I am therefore of the opinion that the decisions of the Supreme Court of Montana and of California are applicable and that, like in those states, also in Porto Rico, there are two concurrent proceedings to punish for contempt of court, but a strict compliance with the one or the other law would be required.

In the case before this court neither the one nor the other has been followed.

―――――

*Dissenting opinion of Mr. Justice MacLeary.*

The applicant in this case, Hobart S. Bird, was sentenced to fine and imprisonment for contempt of court by the District Court of Mayagüez, on the 14th day of October, 1903; and on being arrested by Lieut. Tallada of the Insular Police, sued out a writ of habeas corpus, before this court.

Six grounds are alleged as a basis for the application, and are set out therein as follows:

"1st.—The said sentence and judgment attempted to be rendered by the said Judge Aponte was illegal and void because it was not the judgment of the court but only of one judge thereof;

Se alegan seis motivos como base de la petición, exponién-
dolos en la misma, del modo siguiente :

"1o.—Dicha sentencia y fallo, que el referido Juez Aponte trató de dictar,
era ilegal y nula, porque no era la sentencia del Tribunal, sino solamente la
la de uno de los Jueces del mismo."

"2o.—Porque ni dicho Juez Aponte, ni el citado Tribunal de Distrito de
Mayagüez, tenían competencia alguna para dictar la expresada sentencia, por
la razón de que el suplicante no había cometido ningún acto de desacato ú
ofensa por el que podía imponerse dicha sentencia con arreglo á la ley."

"3o.—Porque dicha sentencia y los procedimientos bajo la misma, y el
referido arresto y detención del suplicante, eran contrarios á la Constitución
y leyes de los Estados Unidos, por cuanto dichos procedimientos no constitu-
yeron un procedimiento legal en debida forma, siendo el suplicante privado
del derecho de una preparación razonable para defenderse contra la acusación
formulada contra él, y porque dicha sentencia y fallo, y los procedimientos
en que estaban basados, eran y son derogación de los derechos constitucio-
nales del suplicante, y constituyen una coartación de la libertad de la prensa;
y porque el suplicante no estaba presente cuando se dictó la sentencia."

"4o.—Porque el suplicante no fué notificado de los autos y mandamientos
del Tribunal, puesto que las únicas notificaciones que recibió, fueron practi-
cadas por la Policía Insular, que carece de autoridad legal para practicar
tales notificaciones."

"5o.—Porque el artículo que fué publicado, según se ha dicho, no consti-
tuye el delito de desacato según las leyes de Puerto Rico, y ni dicho Juez
Aponte, ni la citada Corte de Distrito, tenían competencia para dictar la
referida sentencia contra el suplicante, por desacato á dicha Corte, cometido
por la publicación de dicho artículo."

"6o.—Y además, por la razón de que la órden ó auto, en virtud del cual
fué puesto bajo custodia, era irregular y nulo, porque se omitió de consignar
en dicho auto, el hecho que constituye el referido desacato, y el tiempo y
lugar de la comisión de dicho hecho, así como las circunstancias del mismo."

Estos motivos serán considerados por su orden, después de
haber hecho una breve relación de los hechos preliminares.

Durante el juicio de la causa de Osvaldo Baez, celebrado
ante el Juez Aponte y un Jurado, se publicaron en el "THE
SAN JUAN NEWS," periódico del cual el preso es editor y
administrador, ciertas críticas, que atacaron el honor y la
integridad del Juez Presidente.

Cuando se terminó la causa, se ordenó á Bird, que alegase
motivos porque no había de ser castigado por desacato.   El

"2nd.—Because neither the said Judge Aponte nor the said District Court of Mayagüez had any jurisdiction to render the aforesaid sentence for the reason that no act of contempt or offense was committed by your petitioner for which the said sentence could be imposed in accordance with law;

"3rd.—Because the said sentence and the proceedings thereunder, and the said arrest and detention of your petitioner, was contrary to the Constitution and laws of the United States in that the said proceedings did not constitute due process of law, your petitioner being deprived of the right of reasonable preparation to make a defense to the charge against him and because the said sentence and judgment, the proceedings upon which the same were based, was and is in derogation of the constitutional rights of your petitioner,. and amount to an abridgment of the freedom of the press; and he was not. present when the sentence was rendered.

"4th.—Because no service of process was made upon your petitioner, the only notifications which were received by him having been served by the Insular Police who are without authority of law to execute such processes.

"5th.—Because the article published as aforesaid is not a contempt under the laws of Porto Rico and that neither the said Judge Aponte nor the said District Court had jurisdiction to render the aforesaid sentence against your petitioner for contempt of court in publishing the same.

"6th,—And for the further reason that the order or warrant under which he has been taken into custody is irregular and void, because it fails to set forth the acts constituting such contempt with the time and place of the commission thereof and the circumstances thereof."

These will be considered in their order, after giving a brief statement of the preliminary facts.

During the trial of the case of Osvaldo Baez, before Judge Aponte and a jury, certain criticisms were made in the San Juan News, a periodical of which the prisoner is the editor and manager, reflecting on the honor and integrity of the presiding judge. When the case was concluded, Bird was ruled to show cause why he should not be punished for contempt. He appeared by counsel and on the hearing was adjudged guilty and his punishment fixed at a fine of

compareció representado por un abogado, y en la vista fué declarado culpable, y su castigo fué fijado en una multa de cien dollars y quince días de prisión en la Cárcel de Distrito de Mayagüez.

El primer motivo de queja pone en duda el poder del Juez Presidente del Tribunal de Distrito, para castigar al preso por desacato á dicho Tribunal, por haber celebrado audiencia él solo en tanto que el Tribunal, se compone de tres Jueces. Aunque hay tres Jueces de Distrito en cada Tribunal, no siempre es necesario que todos ellos actúen en cada causa. Se estaba celebrando la vista de la causa criminal de Baez, ante el Juez Aponte y un Jurado, cuando los hechos constitutivos del desacato, fueron cometidos. Dichos hechos tenían referencia directa á los procedimientos en dicha causa. Los procedimientos habidos con motivo del desacato, y que nacieron del juicio por jurado, eran un simple ramo de la causa de Baez, y en tales casos, con arreglo á las leyes de Puerto Rico, solamente uno de los tres Jueces de Distrito celebra audiencia, y él constituye el Tribunal.

Esto está claramente expresado en el artículo 232 del Código de Enjuiciamiento Criminal, que dice lo siguiente:

"Art. 232.—En todos los juicios por Jurado, no habrá más que un Juez, quien recibirá su nombramiento ó comisión periódicamente por conducto del Attorney General, según éste lo estimare oportuno. Sin embargo, en las causas que se oyen de nuevo, puede asistir el tribunal en pleno."

Dicho Juez está reconocido como tal, por muchas otras disposiciones de la ley de Enjuiciamiento Criminal; y esta es la costumbre universal en los Estados Americanos. Un Juez puede constituir Tribunal, y muchas veces lo constituye. El Juez ó los Jueces mismos son conocidos como el "Tribunal," cuando han sido debidamente convocados. La palabra "Tribunal" está definida así en el Diccionario de Leyes, de Bouvier, pag. 452. Por consiguiente, no puede haber duda de que el Juez Presidente tenía el poder de castigar por desacato, por lo que carece de importancia el primer motivo de la mencionada solicitud.

one hundred dollars and imprisonment for fifteen days in the District Jail at Mayagüez.

The first ground of complaint calls in question the power of the presiding judge of the District Court to punish the prisoner for contempt, as he was sitting alone and the court is composed of three judges. Although there are three District Judges in each court, it is not always necessary that all of them should act in every case. The criminal case of Baez was on trial before Judge Aponte and a jury when the acts constituting the contempt were committed. They had direct reference to the proceedings in that case. The contempt proceedings growing out of the jury trial were a mere branch of the case of Baez, and in such cases under the statutes of Porto Rico only one of the three district judges sits, and he constitutes the court.

This is plainly set forth in section 232 of the Code of Criminal Procedure, which reads as follows:

"Section 232.—In all trials by jury there shall be but one presiding judge who shall receive the appointment or assignment from time to time through the attorney general as he may deem proper. In questions of new trials, however, there may be a full bench."

He is so recognized by many other provisions of the law of Criminal Procedure, and this is the universal custom in the American States. One judge can, and very often does, constitute a court. The judge or judges themselves are known as the court when duly convened. The word court is so defined in Bouvier's Law Dictionary, p. 452. Then there can be no doubt that the presiding judge had the power to punish for contempt as there is nothing in the first ground of the application mentioned.

The second ground alleged for the enlargement of the ap-

El segundo motivo alegado para que se ponga en libertad al suplicante, es sustancialmente el mismo que el quinto, á saber, que la referida publicacion no constituye el delito de desacato, y que, por lo tanto, el Tribunal de Distrito de Mayagüez no tenía competencia para conocer del asunto de que se trata. Esto se discutirá más adelante, en relación con el quinto motivo alegado.

El tercer motivo que alega el suplicante en su queja contra la sentencia dictada contra él, merecería que se le diera gran importancia en la consideración de este caso, si estuviese basado sobre hechos. Los procedimientos instruidos con motivo del desacato, aunque sumarios en su carácter, han sido considerados siempre como comprendidos en el requisito de que todas las personas acusadas han de tener el beneficio de "un procedimiento legal en debida forma." La alusión á la libertad de la Prensa está algo obscura. No se podrá sostener, ciertamente, que el editor de un periódico ó un reporter bajo su dirección, tenga el derecho de desdeñar las leyes, y de publicar informes falsos ó manifiestamente inexactos de los procedimientos de un Tribunal y, sin embargo, á menos que signifique ésto, no puede significar nada. Dicha alusión se hizo tal vez con el propósito de utilizarla como base para una apelación en el caso de que esta petición no tuviere buen éxito. Con respecto á la alegación que hace, es de que se negó una oportunidad de hacer preparaciones para su defensa, los autos demuestran que tuvo para ello trece días, que, por cierto, era tiempo suficiente. Además, no se insistió sobre este motivo en el informe oral, y se puede propiamente tratarlo como habiendo sido abandonado.

El cuarto motivo alegado por el preso, para que se le ponga en libertad, es que el auto, mediante el cual se le hizo comparecer ante el Tribunal sentenciador, le fué entregado por miembros de la Policía Insular, que no están autorizados por la ley, á hacer entregas de autos ó decretos en causas criminales. Este es precisamente el objeto de dicho organismo, y la autoridad para tales entregas ha sido ampliamente

plicant is substantially the same as the fifth, that the publication did not constitute a contempt and hence the District Court of Mayagüez had no jurisdiction of the subject-matter. This will be discussed later on, in connection with the fifth reason assigned.

The third ground alleged by the applicant, in his complaint against the sentence pronounced against him, would be entitled to great weight, in the consideration of this case, if it were founded on facts. Contempt proceedings, though summary in their character, have always been held to be within the requirement that all accused persons shall have the benefit of "due process of law". The allusion to the freedom of the press is rather obscure. It certainly cannot be contended that a newspaper editor, or a reporter under his direction, has a right to disregard the laws, and to publish "false or grossly inaccurate reports of the proceedings of any court"; and yet unless it means this it can mean nothing. Perhaps it was designed as a hook on which to hang an appeal, in case this application should not be successful. In regard to being denied an opportunity of making preparation for his defense, the record shows that he had thirteen days, which is certainly long enough. Moreover this ground was not pressed in argument and may be properly treated as having been abandoned.

The fourth reason given by the prisoner for his liberation is that the process by which he was brought before the trial court was served by the members of the Insular Police, who are not authorized by law to execute criminal process. This is the very purpose of the organization and the authority is amply given in the statute. (See Penal Code section 133; and Code of Criminal Procedure, sections 12, 13, 97, 100, 116, 127, 135 and 136.) Besides the prisoner appeared by his counsel in open court and made no such objection; and

concedida en la ley. Véase el Código Penal Art. 133; y el Código de Enjuiciamiento Criminal, artículos 12, 13, 97, 100, 116, 127, 135 y 136. Además, el preso compareció mediante abogado en plena audiencia, y no puso tal objeción; y aún cuando su arresto original hubiese sido ilegal, su comparecencia voluntaria subsana todos los defectos del auto ó de la autoridad del oficial de Policía, que lo entregó. Esta afirmación es enteramente insostenible, é indigna de seria consideración.

El preso también alega en la misma conexión, que se le juzgó en su ausencia; y que no podía estar presente en el acto del juicio, porque tenía que asistir el dia 12, á un juicio en una causa que se le seguía por libelo, en el Tribunal de Distrito de San Juan; y el juicio de que se trata en el presente caso, tuvo lugar en Mayagüez, el dia 13. Si esto era verdad, debía haber manifestado los hechos al Tribunal de Mayagüez, en una declaración jurada, pidiendo un nuevo aplazamiento de dicho juicio. El dejó de hacer esto, y el Tribunal continuó el juicio, como era procedente. Es cierto que cada persona tiene un derecho fundamental á que se le oiga en su propia defensa, y si se le ha negado ese derecho, el Tribunal que la condena sin haberla oido, se excede de su jurisdicción, y semejante sentencia no justificaría su excarcelación. *Mc Clatchy* v. *Superior Court*, 119 Cal. 418. *Postal Tel. Co.* v. *Adams*, 155 U. S. 689. Pero en el presente caso, el preso fué citado, compareció mediante abogado, y fué defendido en el juicio por un Letrado que él mismo había elegido, y en cuanto á este punto, ciertamente no tiene nada de que pueda quejarse. Lo que se hizo, fué cuanto era necesario en una causa por un misdemeanor, como lo es el desacato. Véanse los artículos 179 y 132 del Código de Enjuiciamiento Criminal. En causas por misdemeanor, la costumbre universal y la práctica bien sancionada por la ley en los Estados en el Continente, es de juzgar al acusado en su ausencia, cuando ha comparecido mediante abogado.

El acusado dice, además, en el quinto motivo, que el ar-

even if his original arrest had been illegal his voluntary appearance covers all defects in the process or in the authority of the officer serving the same. This position is altogether untenable and is unworthy of serious consideration.

He also claims, in the same connection, that he was tried in his absence; and that he could not be present at the trial, because he had to attend on a prosecution for libel before the District Court of San Juan on the 12th, and this hearing was held at Mayagüez on the 13th. If this was true he should have presented the facts in an affidavit to the court at Mayagüez, and asked for a further postponement. This he failed to do, and the court properly proceeded with the trial. It is true that every man has a fundamental right to be heard in his own defense, and if he has been denied this right, the court which condemns him unheard exceeds its jurisdiction, and such a judgment will not justify imprisonment. (*McClatchy* v. *Superior Court*, 119 Cal. 418. *Postal Tel. Co.* v. *Adams*, 155 U. S. 689.) But in this case, the prisoner was cited, appeared by counsel, and was defended by a lawyer of his own selection on the trial, and has on this point certainly nothing of which to complain. This was all that was necessary in a misdemeanor case, such as a contempt. (See sections 179 and 132 Code of Criminal Procedure.) In misdemeanor cases it is the universal custom, and the practice well sanctioned by law, in the States on the Continent, to try the defendant in his absence when he has appeared by counsel.

The prisoner further complains, in the fifth of the grounds alleged, that the newspaper article on which the contempt proceedings are based does not constitute a contempt of court. It does not unless it is "The publication of a false or grossly inaccurate report of the proceedings of the court," as defined in paragraph 7 of section 145 of the Penal Code.

tículo de periódico en que están basados los procedimientos
instruidos por desacato, no constituye el delito de desacato á
un tribunal.    No lo constituye, á menos que sea ."la publi-
cación de un informe falso ó manifiestamente inexacto de
los procedimientos del Tribunal," según se define dicho de-
lito en el párrafo 7º del Art. 145 del Código Penal.    Esa
cuestión podía determinarse fácilmente por el Juez senten-
ciador, al examinar el artículo contenido en el periódico de
referencia.    Ciertamente, el Juez que constituía el Tribunal
sentenciador, al examinar el informe, sabría inmediatamente,
por su propio conocimiento si dicho informe era "falso ó
manifiestamente inexacto."    Si hubiese alguna duda sobre
este punto, cualquiera de las partes pudiera presentar prue-
bas para demostrar los hechos del asunto.    El Tribunal ha
decidido que el informe era falso ó manifiestamente inexacto:
y, puesto que no consta nada en sentido contrario, al presen-
tarse la petición de Habeas Corpus, este Tribunal debe con-
siderar la decisión como correcta.    Sin duda alguna, el preso
era culpable de desacato.    El castigo impuesto no excedió
de los términos de la ley, en efecto, era benigno en vista de
los hechos.

Al considerar el sexto motivo alegado, con respecto á la
ilegalidad del auto de prisión, encontramos en los "Estatutos
Revisados y Códigos de Puerto Rico," dos estatutos distintos
sobre este mismo asunto; siendo el primero intitulado "Ley
Definiendo el Delito de Desacato, y Disponiendo la Pena
Correspondiente;" y el segundo, que está contenido en el
Título 10 del Código Penal, designado como artículo 145 del
mismo.    Ambas leyes fueron adoptadas y aprobadas en un
mismo dia, ó se en 1º de Marzo de 1902.    Pero la primera
de estas leyes, empezó á regir desde su adopción, y la segun-
da, el primer dia de Julio del mismo año, ó sea cuatro meses
más tarde.    El Código Penal contiene la cláusula derogato-
ria de costumbre, derogando todas las leyes ó partes de leyes,
que estén en contradicción con el mismo.    Además, el Código
de Enjuiciamiento Criminal de Puerto Rico fué adoptado y

That question could be easily determined by the trial judge on an inspection of the article contained in the newspaper. Certainly the trial court would know at once, from his own knowledge, on perusing the report whether it was "false or grossly inaccurate." Should there be any doubt on the subject evidence could be produced by either party to show the facts in the matter. The court has determined the report to be false or grossly inaccurate; and nothing appearing to be contrary on *habeas corpus* this court must regard the decision as correct. Beyond all doubt the prisoner was guilty of a contempt. ·The punishment fixed did not exceed the the terms of the law, in fact was lenient in view of the facts.

In considering the sixth ground alleged, in regard to the illegality of the warrant, we find in the Revised Statutes and Codes of Porto Rico two distinct statutes on this same subject; the first entitled. "An Act defining the offense of contempt of court and providing for the·punishment thereof," and the second being contained in Title X of the Penal Code and designated as section 145 thereof. Both of these laws were passed and approved on the same day, the 1st of March, 1902. But the first act went into effect from and after its passage, and the second on the 1st day of July following, four months later. The Penal Code has the usual repealing clause, abrogating all laws or parts of laws in conflict therewith. Besides the Code of Criminal Procedure of Porto Rico was passed and approved on the same day with the other acts, having a similar repealing clause and taking effect, like the Penal Code, four months thereafter.

A careful study of these three statutes, taken in connection, shows that the contempt act is in some of its parts in conflict with some of the provisions of the subsequent codes. The codes are· in effect a revision of all previous laws on the subject of crimes and criminal procedure, and the system

aprobado el mismo dia en unión con las otras leyes, conte-
niendo una cláusula derogatoria parecida, y empezando á
regir, lo mismo que el Código Penal, cuatro meses después.

Un estudio cuidadoso de estas tres leyes consideradas en
conexión, demuestra que la ley referente al delito de desa-
cato, en algunas de sus partes está en contradicción con
algunas de las disposiciones de los Códigos subsiguientes.
Los Códigos son, en efecto una revisión de todas las leyes
anteriores sobre la materia de crímenes y Enjuiciamiento
Criminal; y el sistema de leyes penales que contienen, fué
evidentemente designado á reemplazar á todos los sistemas
y leyes anteriores de la misma naturaleza.   En tales casos,
las disposiciones contradictorias de la ley anterior deben ser
consideradas como derogadas.   Sutherland Con. Stat.

Comparemos las dos leyes que están contenidas en un mis-
mo tomo, y que tratan de la materia de desacatos.   En pri-
mer lugar, cada una de ellas contiene una cláusula que en
sustancia declara que "un acto, que además de constituir
un desacato, constituye también un crímen, es castigable de
las dos maneras, ó sea, como desacato y como crímen." Esta-
tutos Revisados y Códigos de Puerto Rico, pág. 85 y 503.
La intención evidentemente fué que las dos leyes habían de
ser concomitantes, y que ninguna de ellas había de oponerse
á la otra.   Por cuanto he podido observar, se encuentran dis-
posiciones parecidas en los Estatutos de todos los Estados.
Y se declara que la comisión de un desacato constituye un
misdemeanor.   Código Penal, artículo 145, pág. 502.   Un
misdemeanor, en los casos en que el Código Penal no pres-
cribe otra pena, se castiga con multa que no exceda de dos-
cientos cincuenta dollars, ó con prisión en la Cárcel que no
exceda de dos años, ó con ambas penas.   Código Penal, artí-
culo 16, pág. 471.   Esto está en contradicción con el segundo
artículo de la Ley sobre desacatos, por el cual se limita la
multa á doscientos dollars y la prisión á treinta días, impo-
niéndose ó la multa ó la prisión ó ambas penas, á discreción
del Tribunal.   Veamos ahora las otras disposiciones de las

of penal laws which they contain was evidently intended to replace all previous systems of a like nature. In such cases the conflicting provisions of the former statute must be held to be repealed. (Sutherland Stat. Con., sec. 154, and cases cited.)

Let us compare the two statutes which are contained in the same volume and cover the matter of contempts of court. In the first place each of them contains a clause in substance declaring that, "An act which besides being a contempt may also be a crime is punishable both as a contempt and a crime." (Rev. Stat. & Codes of P. R. pp 85 and 503.) It was evidently intended that the two remedies should be concurrent and neither should interfere with the other. So far as observed similar provisions are found in the statutes of all the states. And to commit a contempt of court is declared to be a misdemeanor. (Penal Code, sec. 145, p. 502.) A misdemeanor where the punishment is not otherwise prescribed by the Penal Code is punished by a fine not exceeding two hundred and fifty dollars or by imprisonment in jail not exceeding two years or by both. (Penal Code, sec. 16, p. 471.) This conflicts with the second section of the contempt act, which limits the fine to two hundred dollars and the imprisonment not to exceed thirty days or both, in the discretion of the court. Let us now take up the other provisions of the two acts concerning contempts. The act defining contempts divides them into five classes, the Penal Code divides them into eight. The first section of the former act reads as follows:

"Section 1.—(144) The Supreme Court, the District Courts, and any court of record duly established in Porto Rico, shall have to power to punish for criminal contempt, any person or persons guilty of any of the following acts:

"1. Breach of the peace, noise or other disturbance directly tending to

dos leyes referentes á desacatos. La ley que define los desacatos, los divide en cinco clases; el Código Penal los divide en ocho. El primer artículo de la ley primeramente citada, dice lo siguiente:

"Sección 1.—(144)—La Corte Suprema, las Cortes de Distrito y cualquier Tribunal análogo ó semejante, debidamente establecido en Puerto Rico, tendrán facultad para castigar por desacato á toda persona culpable de cualquiera de los actos siguientes:

1. Perturbación del órden, ruido ú otro disturbio, tendente directa ó indirectamente á interrumpir sus procedimientos, ó conducta desordenada, desdeñosa ó. insolente, hácia un Tribunal ó Juez, en presencia de dicho Tribunal, ó durante una sesión del mismo, y tendente á interrumpir sus procedimientos.

2. Obstinada desobediencia, ú oposición intentada ó realizada contra cualquier decreto, mandamiento ú orden legal, expedido ó dictado por algún Tribunal en un pleito ó proceso de que estuviere conociendo.

3. Crítica injuriosa ó infamatoria de los decretos, sentencias, órdenes ó procedimientos de cualquier Tribunal, publicada en algún impreso, periódico ú hoja suelta, para su circulación, tendente á desacreditar injustamente al tribunal ó alguno de sus miembros.

4. La resistencia ilegal y contumaz por parte de alguna persona á prestar juramento ó llenar los requisitos como testigo en una causa pendiente ante dicho Tribunal, ó negarse á contestar á cualquier interrogatorio legal, después de haber jurado ó llenado dichos requisitos, sin excusa legítima.

5. La voluntaria publicación de cualquier informe falso ó groseramente inexacto de procedimientos judiciales. *Disponiéndose,* sin embargo, que la publicación de cualquier informe verdadero y justo de algún procedimiento judicial, no será penable como desacato."

El artículo correspondiente del Código Penal dice así:

"Sección 145.—Toda persona que cometiere alguno de los desacatos relacionados á continuación será reo de "misdemeanor:"

1. Conducta desordenada, desdeñosa ó insolente observada durante la sesión de un Tribunal de Justicia á la inmediata vista y presencia de éste y cuyo objeto directo fuere interrumpir el procedimiento ó menoscabar el respeto debido á su autoridad.

2. Igual conducta observada en presencia de algún árbitro, estando éste ocupado en cualquier juicio ó audiencia, por orden de un Tribunal; ó en presencia de algún Jurado ocupado en algún juicio ó en practicar alguna indagatoria ú otro procedimiento autorizado por la ley.

3. Cualquiera perturbación del orden, alboroto ú otro disturbio, tendente á interrumpir el procedimiento en algún Tribunal.

interrupt its proceedings, or disorderly, contemptuous or insolent conduct towards a court or justice thereof, in its presence or during its session, and tending to interrupt its proceedings.

"2. Willful disobedience of, or resistance offered to or exerted against any lawful writ, mandate or order issued or made by any such court in a suit or action pending therein.

"3. Scurrilous or libelous criticism of the orders, judgments, writs or pro_ ceedings of any court published in any public print or newspaper or circular for circulation, tending to bring the court or any of its members into unde- served disrepute.

"4. The unlawful or contumacious refusal of any person to be sworn or properly qualify as a witness in any cause pending in such court, or after being sworn or qualified the refusal without lawful excuse, to answer any legal interrogatory.

"5. The willful publication of any false or grossly inaccurate report of judicial proceedings: *Provided*, however, that the publication of any true and fair report of any judicial proceeding shall not be punishable as a contempt."

The corresponding section of the Penal Code reads thus:

"Section 145.—Every person guilty of any contempt of court of either of the following kinds, is guilty of misdemeanor:

"1. Disorderly, contemptuos, or insolent behavior committed during the sitting of any court of justice, in immediate view and presence of the court, and directly tending to interrupt its proceedings or to impair the respect due to its authority.

"2. Behavior of the like character committed in the presence of any referee, while actually engaged in any trial or hearing, pursuant to the order of any court, or in the presence of any jury while actually sitting for the trial of a cause or upon any inquest or other proceedings authorized by law.

"3. Any breach of the peace, noise or other disturbance directly tending to interrupt the proceedings of any court.

"4. Willful disobedience of any process or order lawfully issued by any court.

4. Desobediencia obstinada á una intimación ú órden expedida legalmente por algún Tribunal.

5. Resistencia obstinada ofrecida por cualquiera persona á la órden ó intimación legal de algún. Tribunal.

6. Negarse contumaz é ilegalmente alguna persona á prestar juramento como testigo, ó después de jurar, negarse á contestar cualquiera pregunta pertinente ó importante.

7. La publicación de una relación falsa ó manifiestamente inexacta de los procedimientos de un Tribunal.

8. Presentar á algún Tribunal competente para dictar sentencia contra un reo convicto, ó á cualquier miembro de dicho Tribunal, una declaración jurada, testimonio ó exposición cualquiera verbal ó escrita, tendente al agravamiento ó mitigación de la pena que haya de imponerse al reo, salvo en la forma prevista en este Código."

Se verá por una comparación, que no hay una diferencia sustancial entre los primeros párrafos de estos dos artículos, puesto que el Código Penal solamente elabora un poco las disposiciones de la Ley primeramente citada.

El segundo párrafo del primer artículo de la ley definiendo los desacatos, puede compararse con los párrafos 4 y 5 del artículo correspondiente del Código Penal, y se encontrará que son práticamente idénticos.

El tercer párrafo del primer artículo de la ley que define los desacatos, está algo condensado en el párrafo séptimo del artículo correspondiente del Código; pero el sentido sustancial es idéntico para todos los casos y efectos que haya lugar. En efecto, por cuanto el párrafo quinto de la ley definiendo los desacatos, es casi una copia verbal del párrafo séptimo del Código Penal, ó vice-versa, el tercer párrafo de la Ley primeramente citada, puede considerarse como omitido en este último.

El párrafo cuarto del primer artículo de la ley definiendo los desacatos, que se refiere á la conducta contumaz de testigos, está ligeramente condensado en el párrafo sexto del Código Penal, pero no hay diferencia esencial en el texto ni en su significación.

El párrafo quinto del primer artículo de la ley que define los desacatos, dice lo que sigue:

"5. Resistance willfully offered by any person to the lawful order or process of any court.

"6. The disobedient and unlawful refusal of any person to be sworn as a witness; or, when so sworn, the like refusal to answer any material question.

"7. The publication of a false or grossly inaccurate report of the proceedings of any court.

"8. Presenting to any court having power to pass sentence upon any prisoner under conviction, or to any member of such court, any affidavit or testimony, or representation of any kind, verbal or written, in aggravation or mitigation of the punishment to be imposed upon such prisoner, except as provided in this code."

It will be seen by a comparison that there is no substantial difference between the first paragraphs of these sections; the Penal Code elaborating a little the provisions of the former law.

The second paragraph of the first section of the act defining contempts may be compared with paragraphs 4 and 5 of the corresponding section of the Penal Code and they will be found to be practically identical.

The third paragraph of the first section of the act defining contempts is somewhat condensed in the seventh paragraph of the corresponding section of the code, but the substantial meaning is to all intents and purposes identical. In fact, inasmuch as the fifth paragraph of the act defining contempts is almost a verbatim copy of the seventh paragraph in the Penal Code, or vice-versa, the third paragraph of the former act may be considered to be omitted in the latter.

The fourth paragraph of the first section of the act defining contempts relating to the contumacious conduct of witnesses is slightly condensed in the sixth paragraph of the Penal Code, but there is no material difference in the language or the signification.

The fifth paragraph of the 1st section of the act defining contempts reads as follows:

"La voluntaria publicación de cualquier informe falso ó groseramente inexacto de procedimientos judiciales. *Disponiéndose*, sin embargo, que la publicación de cualquier informe verdadero y justo de algún procedimiento judicial, no será penable como desacato."

El párrafo séptimo del artículo 145 del Código Penal, copiado anteriormente, es casi idéntico, y dice lo siguiente:

"La publicación de una relación falsa ó manifiestamente inexacta de los procedimientos de un Tribunal."

Estos son los párrafos que se refieren al desacato de que fué declarado culpable el acusado, y se vé fácilmente que no importa cual de estas leyes tuvo presente el Tribunal, al dictar la sentencia, puesto que la declaración de culpabilidad estaba autorizada por cualquiera de ellas.

Hay dos clases de conducta que se califican de desacato en el Código Penal, y que no están comprendidas en la Ley definiendo aquél delito. Las copiamos del Código como sigue:

2. Igual conducta observada en presencia de algún árbitro, estando este ocupado en cualquier juicio, ó audiencia por órden de un Tribunal; ó en presencia de algún Jurado ocupado en algún juicio ó en practicar alguna indagatoria ú otro procedimiento autorizado por la ley."

8. Presentar á algún Tribunal competente para dictar sentencia contra un reo convicto, ó á cualquier miembro de dicho Tribunal una declaración jurada, testimonio, ó exposición cualquiera, verbal ó escrita, tendente al agravamiento ó mitigación de la pena que haya de imponerse al reo, salvo en la forma prevista en este Código."

No hay en la Ley anteriormente citada un texto que corresponda con éste. Pero ninguno de estos párrafos puede tener relación en el caso que nos ocupa. Se verá, según queda indicado anteriormente, por una comparación de los párrafos tercero y quinto del primer artículo de la ley referente á desacatos, con el párrafo séptimo del artículo 145 del Código Penal, que los hechos imputados al preso, si fuesen probados, constituirían desacato bajo cualquiera de dichas leyes. Por consiguiente, en cuanto á lo concerniente al presente caso, el citado artículo del Código Penal, no está en contradicción con la ley definiendo los desacatos. Sin embargo, la pena prescrita por el Código Penal puede hacerse mayor que la

"The willful publication of any false or grossly inaccurate report of judicial proceedings; *Provided,* however, that the publication of any true and fair report of any judicial proceeding shall not be punishable as a contempt."

The seventh paragraph of section 145 of the Penal Code which is copied above is almost identical and reads as follows:

"The publication of any false or grossly inaccurate report of the proceedings of any court."

These are the paragraphs covering the contempt of which the prisoner was convicted and it is readily seen that it matters not which law was in the mind of the court in passing sentence, the conviction was authorized by either.

There are two classes of behavior which are classified as contempts in the Penal Code which are not included in the act defining contempts. They are taken from the Code as follows:

"2. Behavior of the like character committed in the presence of any referee, while actually engaged in any trial or hearing, pursuant to the order of any court, or in the presence of any jury while actually sitting for the trial of a cause, or upon any inquest or other proceedings authorized by law."

"8. Presenting to any court having power to pass sentence upon any prisoner under conviction or to any member of such court, any affidavit, or testimony, or representation of any kind, verbal or written, in aggravation or mitigation of the punishment to be imposed upon such prisoner, except as provided in this code."

There is no corresponding language in the former act. But neither of these paragraphs could have any possible relation to the case before us.. It will be seen as intimated above by a comparison of the third and fifth paragraphs of the 1st section of the act concerning contempts with the 7th paragraph of section 145 of the Penal Code, that the acts charged against the prisoner if proven would constitute a contempt under either law. Then as far as this case is concerned the section of the Penal Code quoted does not conflict with the act defining contempts. The penalty however, prescribed by the Penal Code may be made greater

prescrita por otra ley, ó sea, la Ley referentes á los desacatos; pero no habiéndose prescrito por ninguna de dichas leyes un mínimun, y hallándose la pena impuesta dentro de los límites de la máxima fijada por cada una de dichas leyes, esta diferencia resulta sin importancia en la consideración del presente caso,. Por consiguiente en cuanto á lo concerniente en el presente caso cualesquiera contradicciones que existan entre la Ley referente á los desacatos y el Código Penal, no son importantes. Más bien son verbales que no sustanciales. Se las puede reconciliar y armonizar sin violentar el texto en grado perceptible.

Pero la última parte del tercer artículo de la ley referente á los desacatos, que prescribe los requisitos que debe tener la órden ó auto, está en seria contradicción con los artículos 327 y 329 del Código de Enjuiciamiento Criminal. Dicha parte del referido artículo tercero dice lo siguiente :

" y siempre que alguna persona fuere multada ó encarcelada por desacato á un Tribunal, deberá firmarse por el Juez sentenciador una órden ó mandamiento para dicha multa ó prisión, consignándose en el mismo el acto ó actos constitutivos de dicho desacato, así como la fecha y lugar de su comisión, y circunstancias de la misma, con especificación de la sentencia del Tribunal, sin lo cual dicha sentencia quedará enteramente nula y sin efecto."

Los artículos contradictorios del Código de Enjuiciamiento Criminal dicen lo que sigue :

" Art. 327.—Cuando se haya dictado sentencia que no sea de muerte se entregará enseguida una copia certificada del original, al oficial que tenga la obligación de ejecutarla, y no será necesaria ninguna otra órden ni autorización para justificar ó pedir la ejecución."

" Art. 329.—Si la sentencia es á prisión, ó al pago de una multa y prisión, hasta que la multa sea satisfecha, el reo deberá ser confiado sin demora al cuidado del oficial correspondiente, y será detenido por éste hasta que la sentencia se haya cumplido."

Por supuesto, estas leyes contradictorias no se pueden concertar ni armonizar. Es inútil decir que la ley referente á los desacatos es una ley especial. No hay nada en ninguna parte de la Recopilación de las leyes, que demuestre esto, ó que dé á una ley preferencia sobre la otra, á excepción de la

than that prescribed by the other act concerning contempts, but no minimum having been prescribed by either act, and the punishment imposed being within the maximum limits fixed by each act, this difference becomes immaterial in the consideration of this case. In so far then as concerns this case, whatever conflicts there may be between the acts concerning contempts and the Penal Code are not material. They are more verbal than substantial. They can be reconciled and harmonized without straining the text to any appreciable extent.

But the latter part of the third section of the act concerning contempts prescribing the requisites of the "order or warrant" is in serious conflict with sections 327 and 329 of the Code of Criminal Procedure. The portion of the said third section referred to reads as follows:

"And whenever a person is fined or committed to jail for a contempt of court and order or warrant for such imprisonment must be signed by the judge delivering such sentence, setting forth the act or acts constituting such contempt, with the time and place of the commission thereof, and the circumstances thereof, and specifying the sentence of the court; otherwise, such sentence will be wholly invalid and inoperative."

The conflicting sections of the Code of Criminal Procedure read as follows:

"Section 327.—When a judgment, other than of death, has been pronounced, a certified copy of the entry thereof upon the minutes must be forthwith furnished to the officer whose duty is to execute the judgment, and no other warrant, or authority is necessary to justify or require its execution."

"Section 329.—If the judgment is for imprisonment, or a fine, and imprisonment until it be paid, the defendant must forthwith be committed to the custody of the proper officer, and by him detained until the judgment is complied with."

Of course these conflicting statutes cannot stand together or be harmonized. It is useless to say that the act concerning contempt is a special act. There is nothing in the statute book anywhere to show that, or to give one statute perference over another, except the rule that the latest expression of the legislative will must prevail. The object

regla de que la última expresión de la voluntad legislativa debe prevalecer. El objeto de la ley definiendo los desacatos, según se expresa en su título, es el "de definir el delito de desacato y disponer la pena correspondiente." Dicha Ley no fué especialmente ideada para prescribir los requisitos de autos de prisión, ni para fijar las formas de sentencia. El Código de Enjuiciamiento Criminal, del cual se han copiado los artículos 327 y 329 antes citados, tiene por objeto especial el establecer un Código de procedimiento. "Procedimiento" se define por Bouvier como "Los métodos de conducir litigios y procedimientos judiciales." Esta definición ha sido sustancialmente condensada en un dictámen del Tribunal Supremo de los Estados Unidos en 107 U. S. 231. Por consiguiente, el objeto de estos últimos artículos era precisamente el de establecer los requisitos de órdenes y autos; y puesto que la ley en la cual se encuentran, empezó á regir cuatro meses más tarde que la otra ley, los términos de estos artículos deben prevalecer sobre los de la ley primeramente citada; y aquélla ley debe considerarse como derogada y revocada.

Siendo así, ¿qué autoridad tiene el Alcaide para retener al preso? Nada más que un auto de prisión firmado por el Secretario. Este auto está dispuesto en el artículo 329 del Código de Enjuiciamiento Criminal que dice lo antes consignado. Estando el auto de prisión, que se hallaba en poder del oficial de policía, redactado en la forma usual para tal auto, es ámpliamente suficiente con arreglo al citado artículo, para la retención del acusado y su entrega al Alcaide de Mayagüez. Después de haberse entregado el preso al Alcaide, este funcionario debe tener una copia certificada de la sentencia, según lo dispuesto en el artículo 327 arriba citado. Por consiguiente, no puede ponerse en libertad al preso con motivo de ningún defecto en dicho auto, que lo haga nulo, según lo prescrito en el artículo 483, párrafo tercero del Código de Enjuiciamiento Criminal, que trata de Habeas Corpus. El auto basta para retener al preso.

La base de la sentencia por la que se pone en libertad al preso en el presente caso, se deriva de la interpretación de una parte del artículo 3º de la Ley definiendo los desa-

of the act defining contempts is expressed in the title to be
"Defining the Offense of Contempt of Court and Providing
for the Punishment Thereof." It was not specially designed
to prescribe the requisites of warrants of arrest nor to settle
the forms of judgments. The Code of Criminal Procedure
from which sections 327 and 329 quoted above were taken,
has as its special object to establish a code of procedure.
Procedure is define by Bouvier to be ".The methods of
conducting litigation and judicial proceedings." This defi-
nition is substantially condensed from an opinion of the
Supreme Court of the United States in 107 U. S., 231.
Then it was the very purpose of these latter sections to lay
down the requisites of orders and warrants, and as the act
in which they are found took effect four months later than
the other act, the terms of these sections must prevail over
those of the act first mentioned, and that act must be
considered as abrogated and repealed. ·

Then what authority has the officer to hold the prisoner?
Nothing but a commitment signed by the clerk. This writ
is provided for under section 329 of the Code of Criminal
Procedure, which reads as stated above. Under this section
the commitment held by the officer being in the usual form
of such a writ, is amply sufficient for his arrest and delivery
to the jailer at Mayagüez. After the prisoner has been
delivered to the jailer that officer must have a certified
copy of the judgment provided for in section 327 above
quoted. Then the prisoner cannot be liberated on account
of any defect in the process rendering it void, as prescribed
in section 483, paragraph 3, of the Code of Criminal Proce-
dure treating of *habeas corpus.* The writ is sufficient to
hold the prisoner.

The basis of the judgment liberating the prisoner in this
case is laid on the construction of a part of section 3 of the
act defining contempts. That entire section reads as follows:

"Section 3.—(146) When a criminal contempt is committed in the im-
mediate presence and view of the court, the punishment therefor may be

catos. Dicho artículo en su totalidad dice lo que sigue:

"Art. 3.—(146)—Cuando se comete un desacato á la inmediata presencia y vista del Tribunal, el correspondiente castigo podrá imponerse en el acto por el Tribunal ó Juez Presidente del mismo. Cuando el desacato no se comete en la forma indicada, la persona ó personas acusadas de haberlo cometido, deberán ser notificadas de la acusación, concediéndoles un plazo razonable para defenderse contra ella *y siempre que alguna persona fuere multada ó encarcelada por desacato á un Tribunal, deberá firmarse por el Juez sentenciador una órden ó mandamiento para dicha multa ó prisión, consignándose en el mismo, el acto ó actos constitutivos de dicho desacato, así como la fecha y lugar de su comisión, y circunstancias de la misma, con especificación de la sentencia del Tribunal, sin la cual dicha sentencia quedará enteramente nula y sin efecto.*"

"La pena, por desacato, impuesta con arreglo á esta Sección, no impedirá la acción penal que por el mismo delito entablare el Fiscal de la respectiva jurisdicción; pero cuando una persona así castigada resultare convicta en la causa adicional que se le siguiere, el Tribunal, al sentenciarla, tomará en cuenta el castigo impuéstole anteriormente con arreglo á esta ley."

Se supone que la parte subrayada del texto anterior, prescribe los requisitos del auto de prisión bajo el cual una persona declarada culpable de desacato, ha de ser entregada á la Cárcel. Es difícil encontrar otra ley parecida á esta. ¿Hay razón alguna por la cuál un auto de prisión en un caso de desacato deba ser distinto de otro de la misma clase dictado en una causa por cualquier otro misdemeanor? La persona declarada culpable ha sido citada en debida forma; se ha celebrado la vista de su causa en el Tribunal; se ha debidamente considerado su defensa, cualesquiera que hayan sido las alegaciones hechas por ella en la misma; y se la ha condenado á prisión. Dicha persona conoce perfectamente los términos de la sentencia y los motivos en que ésta está fundada. ¿Es semejante causa de tanta más importancia que una simple agresión, ó una ratería, ó una insignificante turbación de la paz pública, que el auto en esta causa deba estar firmado por el Juez que dicte tal sentencia, y que, además, deba consignarse en el mismo, el acto ó actos constitutivos del referido desacato, así como la fecha y lugar de su comisión, y circunstancias de la misma? Si es así, la razón de semejante importancia no es muy evidente para el entendimiento de una persona de común instrucción legal. Pero el texto de este artículo prosigue, exigiendo además que se es-

inflicted immediately by the court or the presiding judge thereof. When such contempt is not so committed, the person or persons charged therewith must be notified of the accusation and be given reasonable time to defend against such charge; *and whenever a person is fined or committed to jail for a contempt of court, and order or warrant for such fine or imprisonment must be signed by the judge delivering such sentence, setting forth the act or acts constituting such contempt, with the time and place of the commission thereof, and the circumstances thereof, and specifying the sentence of the court; otherwise such sentence will be wholly invalid and inoperative.*

"Punishment for a contempt of court under this section shall not bar a criminal prosecution for the same offense conducted by the fiscal of the proper jurisdiction, but where a person so punished, is convicted upon such additional prosecution, his previous punishment under this act shall be taken into consideration by the court pronouncing the sentence against him."

This language italicized above is supposed to prescribe the requisites of the commitment under which a person adjudged guilty of contempt shall be committed to jail. It is difficult to find another statute similar to this. Is there any reason why a commitment in a contempt case should be different from such a writ in any other misdemeanor? The person convicted has been duly cited, had his day in court, his defense, whatever it may have been, duly considered, and he is condemned to imprisonment. He is perfectly aware of the terms of the judgment and the reasons on which it is founded. Is such a case of so much greater importance than a simple assault, or petty theft, or a common breach of the peace, that the writ in this case must be "signed by the judge delivering such sentence" and must besides "set forth the act or acts constituting such contempt, with the time and place of the commission thereof, and the circumstances thereof?" If so, the reason of such importance is not readily apparent to the ordinary legal mind. But the language of this section goes further and requires to be specified "the sentence of the court" and clinches the nail by adding "otherwise such sentence will be wholly invalid and inoperative". It is beyond question that the commitment or mittimus in this case does not

pecifique "la sentencia del Tribunal," y remacha el clavo, añadiendo : "de lo contrario, dicha sentencia quedará enteramente nula y sin efecto." Está fuera de duda que el auto ó decreto de prisión en el presente caso, no llena los supuestos requisitos prescritos de este artículo. ¿Cuál es entonces la consecuencia? ¿Invalida dicho auto la sentencia del Tribunal? Según la opinión de algunos de mis compañeros, la invalida. Puede ser que esto sea una interpretación literal de la ley. Pero si se desea dar á la ley una interpretación extrictamente literal, entonces deberá observarse que "la órden ó mandamiento es el documento en que se exigen estos requisitos; por lo tanto, dándole efecto á la conjunción disyuntiva "ó," se ha cumplido con la ley si la órden (order) ó el mandamiento (warrant) está redactado con arreglo á los términos prescritos.

Las palabras "order" (órden) y "warrant" (mandamiento) no son sinónimas en manera alguna. La palabra "order" (orden) se define como sigue, por Bouvier, quien, según ha dicho el Tribunal Supremo de los Estados Unidos, es el mejor lexicógrafo en leyes (107 U. S. p. 231):

" Una "order" (órden) es cualquier mandato de un Tribunal ó Juez, dictado ó expedido por escrito, y no incluido en un fallo. N. Y. Code of Proc. Seec. 400; 51 1a. 127. Pero frecuentemente se le dá á un decreto el nombre de "órden."

La palabra "warrant" (mandamiento) ha sido definida por la misma alta autoridad, como sigue :

" Un "writ" (mandamiento) expedido por un Juez de Paz ú otro funcionario autorizado para ello, y dirigido á un alguacil ú otra persona competente, exigiéndole que detenga á una persona designada en dicho mandamiento, y acusada de haber cometido algún delito; y la traiga ante aquél ó algún otro Juez de Paz."

El porqué tales cosas como las mencionadas, han de consignarse en el mandamiento, es muy difícil de comprender, á no ser que la intención haya sido de consignarlas en la sentencia que en el presente caso se llama "órden"; y para que, habiéndose descuidado esto por algún motivo, el defecto pudiese subsanarse, consignándose dichos datos en el "warrant" (auto de prisión), ó "commitment" (auto de prisión), ó "mittimus" (auto ó decreto de prisión), como debía haberse pro-

comply with the supposed requisites prescribed in this section. Then what is the consequence? Does it invalidate the judgment of the court? In the opinion of some of my colleagues it does. This may be a literal construction of the law. But if it is desired to give a strictly literal construction to the statute then it must be observed that the "order or warrant" is the document of which these requirement are predicated; hence, giving effect to the disjunctive conjunction "or", the law is satisfied if either the order or the warrant is drawn in accordance with the terms prescribed. The words "order" and "warrant" are not synonymous by any means. The word "order" is defined by Bouvier, who is said by the Supreme Court of the United States to be the best legal lexicographer (107 U. S. p. 231), as follows:

"An order is any direction of a court or judge made or entered in writing, and not included in a judgment. N. Y. Code of Proc. Sec. 400; 51 Ia. 127. But a decree is often called an order."

The word "warrant" is defined by the same high authority as follows:

"A writ issued by a justice of the peace or other authorized officer, directed to a constable or other proper person, requiring him to arrest a person therein named, charged with committing some offense, and to bring him before that or some other justice of the peace."

Why such matters as those mentioned should be set forth in the warrant is very hard to understand, unless it should be that it was intended to set them out in the judgment which is here called an "order", and that having been neglected. from any cause the defect could be supplied by setting them forth in the warrant or the commitment or mittimus, as the writ should have been properly styled; the word warrant being more properly applied to the writ by which the prisoner is first apprehended and brought before the court for trial. Any other construction would make a defect

piamente llamado el auto de referencia; aplicándose la palabra al "warrant" (auto de prisión) con más propiedad al "writ" (decreto), en virtud del cuál el acusado es primero detenido y traido ante el Tribunal, para ser juzgado. Cualquiera otra interpretación daría por resultado que por un defecto en el auto de prisión, el fallo del Tribunal, ó al menos la parte dispositiva del mismo, llamada la sentencia, quedaría "enteramente nula y sin efecto". Esto es sumamente ilógico. El auto de prisión debería depender del fallo, con relación á su validez, y no el fallo del auto de prisión. El que una sentencia perfectamente válida y justa, dictada por un Tribunal competente en una causa sobre la cual tenía jurisdicción, tanto con respecto á la parte cuanto al asunto de que se trata, quedase "nula y sin ningún efecto" con motivo de un defecto en un decreto de prisión, que por lo general es expedido por el Secretario, y que el Juez del Tribunal raras veces vé, si es que lo vé jamás, raya en absurdo. Pero puede ser que la intención haya sido, que cuando el desacato fuese cometido en la presencia del Tribunal—y el acto de imponer la multa puede ser muy sumario—la órden y el mandamiento pudiesen ser combinados, y virtualmente incluidos en el mismo documento; y que se adoptó este método para conservar una constancia de la causa. Pero no es así en el caso de que se trata. En el presente caso, el desacato no era directo, sino deducido por interpretación de los hechos cometidos por el acusado, y los procedimientos deben fundarse en una declaración jurada ó en una órden exigiendo á dicho acusado que alegue motivos por que no deba castigársele por desacato; y debe celebrarse un juicio y dictarse la sentencia en la forma usual; y no hay ocasión para combinar la órden y el mandamiento, ó mejor dicho, la sentencia y el auto de prisión; sino cada uno de dichos documentos debe dictarse y expedirse separadamente, en la forma acostumbrada para tales documentos.

Pero todas las autoridades tienden á demostrar que no debe nunca interpretarse una ley de tal manera que resulte un absurdo ó una inconveniencia, á no ser que esto claramente haya sido la intención. El Tribunal Supremo de California, de cuyo Estado nuestro sistema de leyes crimina-

in the commitment render the judgment of the court, or at least the disposing part of it called the sentence, "wholly invalid and inoperative". This is extremely illogical. The commitment should depend for its validity on the judgment and not the judgment on the commitment. That a perfectly valid and righteous judgment of a court of competent jurisdiction rendered in a cause over which it had power to act, both in reference to the party and the subject matter, should become "invalid and inoperative" because of a defect in a writ, generally issued by the clerk and which the judge of the court rarely if ever sees, is bordering on absurdity. But possibly it was intended when the contempt should be committed in the presence of the court, and the act imposing the fine may be very summary, that the order and the warrant might be conbined and virtually included in the same instrument, and this method was taken of preserving a record of the case. But such is not the case at bar. Here the contempt was not direct but constructive and the proceedings must be founded on an affidavit, or a rule to show cause, and there must be a formal trial and judgment entered in the usual way, and there is no occasion to combine the order and the warrant, or the judgment and the commitment, more properly speaking, together; but each should be rendered and issued separately in the form usual in such documents.

But all the authorities go to show that a statute should never be so construed as to involve an absurdity or even an inconvenience unless it is plainly so intended. The Supreme Court of California, from which our system of criminal law has been derived, uses in various decisions, on this subject, the following pertinent language:

"The legislature never contemplated any such absurd result. While it is not the business of the court to make a statute, yet in the interpretation thereof it must look at the context and the result that would follow, in order to arrive at the intent. A literal construction will not always obtain, parti-

les ha sido derivado, pronuncia en varios fallos sobre este asunto, las siguientes pertinentes palabras:

"La Legislatura nunca intentó un resultado tan absurdo como este. Aunque no incumbe al Tribunal hacer leyes, sin embargo, en la interpretación de las mismas, debe fijarse en el texto y en el resultado que se obtendría, para llegar á comprender de este modo, la intención del legislador. No siempre prevalecerá una interpretación literal, especialmente cuando tal interpretación conduce á un absurdo. *People* v. *Craycroft*, 111 Cal. 544. *Stockton School District* v. *Wright* 134 Cal. 68."

"Es de presumirse que la Legislatura tuvo la intención de dar á sus leyes un sentido tal que las haría operativas y eficaces." (Black on Interpretation of Laws, 112, and cases cited). Black sobre interpretación de leyes, 112, y casos allí citados. "La interpretación debe ser razonable." (Civil Code, Secc. 3542.)"

"La interpretación debe tender fuertemente á evitar consecuencias absurdas y aún grandes inconveniencias; porque es preciso llevar á cabo la intención legislativa, y no puede suponerse que sea ninguna de éstas. Grandes intereses públicos no serán innecesariamente puestos en peligro por la interpretación. *Bishop's Written Laws* c, 19. *People* v. *Curry* 139 Cal. 94 and 95."

"Una Ley puede ser interpretada contrario á su sentido literal, cuando una interpretación literal daría por resultado un absurdo ó una incongruencia; y el motivo y la intención del legislador prevalecerán sobre la extricta letra de la ley, cuando al adherirse á la extricta letra, conduciría á una injusticia ó á un absurdo."

"No puede negarse que el texto de esta ley es suficientemente ámplio para incluir la franquicia y el privilegio solicitados por el peticionario; pero no siempre se considerará una ley como comprensiva de todo caso que cae dentro de sus términos literales; la pena de muerte proclamada contra toda persona que derrame sangre en la calle, no la merece un cirujano que sangre una persona que se ha desmayado; y así por lo general, no se aplicará ninguna ley de tal manera que produzca un absurdo palpable. *People* v. *Craycroft*, 111 Cal. 547."

"Si es posible evitarlo, no debe darse á una ley una interpretación que conduciría á un resultado absurdo, ó á una conclusión claramente no intentada por la Legislatura. *Merced Bank* v. *Cassacia*, 103 Cal. 645."

Por consiguiente, no estamos obligados, por cierto, á dar á esta ley una interpretación tan literal que nos conduzca al evidente absurdo de invalidar el fallo del Tribunal á causa de defectos en el "commitment" ó "warrant" (auto de prisión), si es que se puede llamarlo así. La única interpretación razonable de estas disposiciones de dicha ley, es que se insertó la conjunción disyuntiva "ó" para hacer posible el

cularly when such construction leads to an absurdity." (*People* v. *Craycroft*, 111 Cal. 544; *Stockton School District* v. *Wright*, 134 Cal. 68.)

"It is presumed that the legislature intended to impart to its enactments such a meaning as would render them operative and effective. (Black on Interpretation of Laws, 112, and cases cited.) 'Interpretation must be reasonable.' (Civil Code, sec. 3542.)

"The interpretation should lean strongly to avoid absurd consequences, and even great inconvenience; for the legislative meaning is to be carried out, and it cannot be supposed to be any of these. Great public interests will not needlessly be put at hazard by the interpretation. (Bishop's Written Law, c. 19.)" (*People* v. *Curry*, 130 Cal. 94 and 95.)

"A statute may be construed contrary to its literal meaning, when a literal construction would result in an absurdity or inconsistency; and the reason and intention of the lawgiver will control the strict letter of the law when to adhere to the strict letter would lead to injustice or absurdity."

"It cannot be denied the language of this act is broad enough to include the franchise and privilege which the petitioner seeks, but a statute will not always be held to include every case which falls within its literal terms; the penalty of death denounced against any person who draws blood in the street is not incurred by a surgeon who bleeds one who has fallen in a fit, and so, generally no law will be so applied as to work a palpable absurdity.' (*People* v. *Craycroft*, 111 Cal. 547.)

"A construction should not be given to a statute, if it can be avoided, which will lead to absurd results, or to a conclusion plainly not contemplated by the legislature." (*Merced Bank* v. *Cassacia*, 103 Cal. 645.)

Then we are certainly not called upon to follow such a literal interpretation of this statute as to lead us to the obvious absurdity of invalidating the judgment of the court on account of defects in the commitment, or warrant if it can be so called. The only reasonable interpretation of these provisions of the statute is that the disjunctive conjunctive "or" was inserted to enable any omission in the judgment, or "order", to be corrected in the commitment, or "warrant". It is claimed further that, inasmuch as the code makes contempt of court a misdemeanor, it cannot be punished summarily, but must be prosecuted by complaint before a court having jurisdiction of a misdemeanor case. This proposition is answered by the code itself, which says:

suplir en el "commitment" ó "warrant" (auto de prisión),
cualquiera omisión que hubiere. ocurrido en el fallo ú "ór-
den" (order).   Se pretende, además, que, puesto que el Có-
digo califica el desacato como "misdemeanor", no puede ser
castigado sumariamente, sino debe ser perseguido mediante
querella ante un Tribunal que sea competente para conocer
de causas por "misdemeanor".   Esta proposición queda con-
testada por el Código mismo, que dice :

  "Un acto, que además de constituir un crímen, constituya  también un de-
sacato, es castigable como desacato y como crímen." "Penal Code, Sec. 145,
last lines." (Código Penal, artículo 145, líneas finales).

El texto de la ley que define los desacatos, es parecido.
Estatutos Revisados y Códigos de Puerto Rico, página 85.
Nuestra ley sobre desacatos, tal como está contenida en el
artículo 145 del Código Penal, es casi exactamente idéntica
al artículo 293 del Código Penal de Montana habiéndose
tomado ámbos del Código Penal de California.   En la causa
de el Estado ex rel Flynn contra el Tribunal de Distrito 24
Montana 35, el Tribunal Supremo de dicho Estado, hablando
por conducto del Señor Juez Hunt dice :

  "Un desacato á un Tribunal, que es castigable con  multa ó prisión, ó con
ambas penas, es un delito público, según el artículo 15 del Código Penal,
que define un crímen ó delito público como un acto cometido ú omitido en
violación de una ley que lo prohibe ú ordena, y que apareja, al declararse
culpable al acusado, un castigo de muerte, ó de prisión, ó de multa, etc. Una
persona que es culpable de desacato á un Tribunal, por obstinada desobe-
diencia á una órden de interdicto legalmente expedida, puede ser castigada
con arreglo al procedimiento sumario prescrito en el Título 5 *supra*, ó se la
puede castigar con arreglo al Código Penal, como por un "misdemeanor",
bajo el artículo 293, en el cual el desacato está calificado específicamente
como "misdemeanor".

  "Las leyes referentes á desacatos fueron tomadas de California, donde han
sido examinadas y discutidas repetidas veces. *Ex parte Gould*, 99 Cal. 360,
33 Pac. 1112, 21 L. R. A. 751; *Cosby* v. *Superior  Court*, 110 Cal. 52, 42
Pac. 460; *Schwarz* v. *Superior Court*, 111 Cal. 112, 43 Pac. 460; *McClotchy*
v. *Superior  Court*, 119 Cal. 419, 51 Pac. 696, 39 L. R. A. 691.   En la
causa ex parte Hollis 59 Cal. 408, que fué adoptada  como precedente en la
causa ex parte Gould, *supra*, se decidió que el desacato á un  Tribunal, es un
delito público castigable tanto por la acusación ó información ante un Juez,
cuanto por los procedimientos sumarios prescritos por el Código  de Enjuicia-
miento Criminal."

'An act which besides being a crime may also be a contempt, is punishable both as a contempt and a crime." Penal Code, section 145, last lines.

Similar language is used in the act defining contempts. (Revised Statutes and Codes of Porto Rico, p. 85.) Our statute of contempts as contained in section 145 of the Penal Code is almost exactly identical with section 293 of the Penal Code of Montana, both having been copied from the Penal Code of California. In the case of *ex rel. Flynn* v. *The District Court*, 24 Montana 35, the Supreme Court of that State, speaking through Mr. Justice Hunt, says:

"A contempt of court punishable by fine or imprisonment, or both, is a public offense, under section 15 of the Penal Code, which defines a crime or public offense as an act committed or omitted in violation of a law forbidding or commanding it, and to which is annexed upon conviction a punishment either of death, imprisonment or fine, etc. One guilty of contempt of court by wilful disobedience of an injunction order lawfully issued may be punished under the summary procedure provided for by Title V, *supra*, or he may be dealt with under the Penal Code as for a misdemeanor, under section 293, where a contempt of court is specifically made a misdemeanor.

"The statutes of contempt of court in Montana were taken from California, where they have been examined and passed upon repeatedly. (*Ex parte Gould*, 99 Cal. 360, 33 Pac. 1112, 21 L. R. A. 751; *Cosby* v. *Superior Court*, 110 Cal. 52, 42 Pac. 460; *Schwarz* v. *Superior Court*, 111 Cal. 112, 43 Pac. 460; *McClotchy* v. *Superior Court*, 119 Cal. 419, 51 Pac. 696, 39 L. R. A. 691.) In *Ex parte Hollis*, 59 Cal. 408, followed in *Ex parte Gould, supra*, contempt of court is decided to be a public offense, punishable by indictment or information, as well as by the summary proceedings prescribed by the Code of Civil Procedure."

This, with the California cases cited, certainly settles this question adversely to any such objection, if the language of our own statutes could be deemed insufficient.

But it is suggested that the Penal Code does not repeal the act defining contempts nor modify any part of it as contended here, because an exception is made by section 7 of the Code which covers the act mentioned. This section of the Code reads as follows:

Esto en unión con los casos de California antes citados, ciertamente resuelve esta cuestión abversamente á cualquier objeción de esta clase, si pudieran estimarse insuficientes nuestras propias leyes.

Pero se alega que el Código Penal no deroga la ley que define los desacatos, ni modifica parte alguna de la misma, como se sostiene en el presente caso, porque se establece una excepción en el artículo séptimo del Código, cuyo artículo se refiere á la ley mencionada, y dice lo que sigue:

"Art. 7.—Este Código no afecta á ningún poder conferido por ley, á cualquier consejo de guerra, autoridad ú oficial militar para imponer castigos á delincuentes; ni ningún poder conferido por la ley á cualquier cuerpo, tribunal, ó funcionario público, para castigar delincuentes."

Estas palabras no se refieren á Cortes de Distrito, á menos que la intención haya sido de que la palabra "Tribunal" había de comprender "Courts" (Cortes). Ahora bien, éste no es el sentido que ordinariamente se dá en inglés á la palabra "Tribunal". Y, en ninguna otra parte de los Códigos, se usa esta palabra en tal sentido. Es verdad que la palabra "Tribunal" á veces significa "Tribunal ó Foro", pero si la Legislatura hubiese tenido la intención de referirse, en este artículo, á alguna "Corte" (Court) hubiese empleado dicha palabra. Según el contexto, la intención fué evidentemente, hacer referencia á un cuerpo especialmente constituido, con facultades de caracter casi judicial, como el Consejo Ejecutivo ó una comisión especial, nombrada para investigar y decidir alguna disputa ó cuestión. Pero este artículo no puede referirse al artículo tercero de la Ley que define los desacatos, porque esta última no se refiere á la "imposición de castigos á los delincuentes", sino solamente á la forma de una "orden ó mandamiento", lo cual está dentro del objeto del Código de Enjuiciamiento Criminal, que no contiene semejante artículo como el No. 7, arriba citado. Por consiguiente, no se puede confiar en este artículo como cláusula de excepción, para protejer contra la derogación, á la última cláusula del artículo tercero de la Ley que define los desacatos. Por lo tanto, puesto que los artículos 327 y 329 no admiten excepciones, cualquier auto que se ajuste á sus términos, es válido. Examinado bajo

"Section 7.—This Code does not affect any power conferred by law upon any court martial or military authority or other officer, to impose or inflict punishment upon offenders; nor any power conferred by law upon any public body, tribunal or officer, to impose or inflict punishment upon offenders."

This language has no reference to district courts, unless the word "tribunal" is intended to include "courts". Now this is not a common use for the word tribunal in English. And no where else in the code is this word used in such a sense. It is true that "tribunal" sometimes means a "court or forum", but if the legislature had intended to refer to any "court" in this section they would have used that word. From the context it was evidently intended to refer to a specially constituted body with *quasi* judicial powers, like the Executive Council or a special commission appointed to investigate and decide some disputed question. But this section cannot refer to the third section of the act defining contempts, because the latter has no reference to "imposing or inflicting punishment upon offenders", but solely to the form of an "order or warrant" which lies within the purview of the Code of Criminal Procedure, which contains no such section as number 7 above quoted. Then there can be no reliance placed on this section as a saving clause to protect the latter clause of section 3 of the act defining contempts from repeal. Inasmuch, therefore, as sections 327 and 329 admit of no exceptions, any warrant which complies with their terms is valid. Tried by this square the warrant exhibited by the police officer in his return to the writ of *habeas corpus* is amply sufficient to justify him in holding the prisoner.

The whole record has been brought before this court on the request of counsel for applicant and is to be considered in evidence.

Some reluctance is shown to re-examine the question of the force and effect of the third section of the act defining contempts, because this court decided in a sentence pro-

este punto de vista, el auto de prisión exhibido por el oficial de policía, en el informe que dió con motivo del auto de *habeas corpus*, es ampliàmente suficiente para justificarlo en retener el preso.

A petición del abogado del suplicante, se han traido todos los autos ante este Tribunal, y hay que considerarlos en la práctica de las pruebas.

Se manifiesta alguna repugnancia contra el volver á examinar la cuestión del vigor y efecto del tercer artículo de la ley, definiendo los desacatos, porque este Tribunal decidió en una sentencia dictada en la causa de H. S. Bird ex parte, en 1.º de Mayo de 1903, que defectos en el auto de prisión hacían nula la sentencia. Cuando se encuentra que el fallo de algún Tribunal es erróneo, este mismo Tribunal, aún cuando esté compuesto de las mismas é idénticas personas, no debe vacilar ni un momento de desecharlo y seguir la ley. Dos errores ó más, en que se persista de tiempo en tiempo, no pueden nunca tener el efecto de hacer justa una decisión errónea. Cuando el Tribunal se desvía, y vuelve á descubrir la verdadera senda, debe, sin perdida de tiempo, volver sobre sus pasos. Cuando un hombre sabio corrige un error, en que ha incurrido inconscientemente, solo demuestra al mundo, que es más sabio hoy de lo que era ayer. De todos modos, en cuanto á mí, no puedo nunca consentir en estar equivocado por más tiempo, cuando se me ofrece una oportunidad de corregirme. Según mi opinión el fallo en la causa de Bird ex parte, fechado el 1.º de Mayo de 1903, debe desecharse de una vez.

Además de todas las razones anteriores, es cosa bien determinada por el Tribunal Supremo de los Estados Unidos, que los defectos de un auto de prisión no son importantes cuando aparecen motivos suficientes para la detención del preso. El Sr. Juez Gray, emitiendo el dictámen de dicho Tribunal en una causa bien considerada y fallada en 1891, se expresa en los siguientes términos:

"Un auto de *Habeas Corpus* no es como una demanda entablada para recuperar daños y perjuicios por una detención ó prisión ilegal, sino su objeto es averiguar si se puede legalmente retener al preso bajo custodia; y si se demuestra un motivo suficiente para su retención por el Gobierno, no se le

nounced in the case of *H. S. Bird, ex parte,* on the 1st of May, 1903, 3 Porto Rico Reports, 501, that defects in the writ of commitment rendered the judgment void. When a decision of any court is found to be erroneous the same tribunal, even when composed of the same identical persons, ought not to hesitate for a moment to overrule it and follow the law. Two errors or more persisted in from time to time can never make an erroneous ruling right. When the court gets off the track, and discovers the true path again, it should lose no time in retracing its steps. When a wise man corrects an error into which he has unwittingly fallen he only shows the world that he is wiser to-day than he was yesterday. At any rate, for my part, I can never consent to be wrong any longer when an opportunity is offered to set myself right. In my opinion the decision in the case of *Bird, ex parte,* dated 1st of May, 1903, 3 Porto Rico Reports, 501, should be at once overruled.

Besides all the foregoing reasons it is well settled by the Supreme Court of the United States that defects in a commitment are immaterial when sufficient grounds for the detention of the prisoner appear. Mr. Justice Gray, delivering the opinion of that court, in a well considered case, decided in 1891, uses the language following :

"A writ of *habeas corpus* is not like an action to recover damages for an unlawful arrest or commitment, but its object is to ascertain whether the prisoner can be lawfully detained in custody; and if sufficient grounds for his detention by the government is shown, he is not to be discharged for defects in the original arrest or commitment." Citing *Ex parte Bollman & Swartwout,* 4 Cranch, 75, 114, 125; *Coleman* v. *Yennessee,* 97 U. S. 509, 519; *United States* v. *McBratney,* 104 U. S. 621, 624; *Kelly* v. *Thomas,* 15 Gray, 192; *the King* v. *Marks,* 3 East 157; Shuttleworth's Case, 9 Q. B. 651. (See *Nishimura Ekiu* v. *United States,* 142 U. S. 651.)

Surely it cannot be contended that no sufficient ground for detaining this prisoner has been shown. According to the judgment of the court which had jurisdiction of the

debe poner en libertad á causa de defectos en la original orden de arresto ó
auto de prisión". Se citan *Ex parte Bollman & Swartwout,* 4 Cranch, 75,
114, 125; *United States* v. *McBratney,* 104, U. S. 621, 624; *Kelly* v.
*Thomas,* 15 Gray, 192. *the King* v. *Marks,* 3 East, 157; Shuttleworth's
case 9 Q. B. 651. Véase *Nishimura Ekiu* v. *United States,* 142 U. S. 651.

No se podrá sostener, ciertamente, que no se haya demos-
trado motivo suficiente para retener á este preso. Según la
sentencia del Tribunal que tenía jurisdicción sobre la per-
sona del acusado y sobre el asunto de que se trata, dicho
acusado ha sido declarado "culpable de desacato á la auto-
ridad del Tribunal", consignándose, por completo, en los
autos, los hechos en que estaba basada la sentencia, y fué
condenado á multa y prisión. No se presentaron pruebas
para demostrar la veracidad del contenido del artículo ofen-
sivo, y no se demuestra ninguna otra justificación. Las seis
objeciones técnicas alegadas en el juicio celebrado en este
procedimiento, evidentemente no están bien fundadas, según
resulta del minucioso exámen que se ha hecho de cada uno
de ellos, por su órden. ¿ Porqué, entonces, había de eludirse
los fines de la justicia, poniéndole en libertad simplemente
con motivos de defectos—si es que estos existían—en la
orden de arresto ó auto de prisión original? Tal proceder,
me parece á mí, equivale á permitir á los acusados· el
burlarse de los mandamientos de los Tribunales, y de hacer
uso de un auto, casi sagrado por su dedicación á la causa de
la libertad, como escudo para protejer á los culpables contra
el castigo que hayan merecido.

Por consiguiente, revisando este caso desde el principio
hasta el fin, considerándolo en todos sus aspectos, y dando
la debida importancia á cada punto alegado por el peticio-
nario, es claramente evidente que no está "ilegalmente
encarcelado ni coartado en su libertad" (Artículo 469 del
Código de Enjuiciamiento Criminal), y que no se puede
alegar á su favor, ninguno de los motivos mencionados en el
artículo 483 del Código de Enjuiciamiento Criminal, y que
no tiene derecho á que se le ponga en libertad. Se debe,
por lo tanto, entregar nuevamente el preso á la custodia de
la Policía Insular, para que se cumplan las órdenes que, con
respecto á él, ha dictado el Tribunal sentenciador.